[Civ. No. 28464. First Dist., Div. Two. Jan. 14, 1972.]

ELIZABETH EBAUGH, Plaintiff and Respondent, v.
R. RABKIN et al., Defendants and Appellants.

**COUNSEL**

Bledsoe, Smith, Cathcart, Johnson & Rogers, Robert A. Seligson and Ricksen, Ricksen, Snook & Vendt for Defendants and Appellants.

No appearance for Plaintiff and Respondent.

**OPINION**

**KANE, J.**—Defendants T. Scruggs, M.D., and Permanente Medical Group, a co-partnership (Permanente), appeal from a judgment entered on a jury verdict awarding to respondent Elizabeth Ebaugh both compensatory and punitive damages. Defendants R. Rabkin, M.D., and Kaiser Foundation Hospitals also appeal from the judgment but the appeal by those parties has been rendered moot by the entry of a judgment in their favor notwithstanding the verdict, which judgment has become final. Accordingly, the appeal by Rabkin and Kaiser is ordered dismissed.

Respondent, a patient of Dr. Rabkin, was admitted to the Kaiser Foundation Hospital in Walnut Creek on February 6, 1967, and was scheduled for a breast biopsy the next day at 8 a.m. Appellant Scruggs was the treating physician for one Mary Notarmaso who was admitted to the same hospital and was scheduled for gall bladder surgery on the same day and at the same hour as respondent. Both patients were in the same ward and attended by the same nurses. On the operation day one patient left the ward at 7:35 a.m., the other shortly after, at 7:40 a.m. Somehow a mixup in the charts occurred, as a result of which each patient was subjected to the surgery scheduled for the other. Dr. Scruggs, who was supposed to perform the operation on Mrs. Notarmaso, opened up respondent's ab-

domen and examined her gall bladder. When this examination revealed a normal gall bladder, Dr. Scruggs inspected the chart and the wrist band of respondent. It was at this point that he discovered the error.

In the meantime Dr. Rabkin made an incision on Mrs. Notarmaso. He soon discovered that he was not operating on respondent and immediately terminated the procedure. He repaired the wound that he had made and placed a dressing on it. Shortly after, he located respondent and performed the scheduled breast biopsy on her.

The jury returned verdicts awarding respondent $7,500 compensatory damages against all defendants and punitive damages in the sums of $10,000 against Dr. Rabkin, $5,000 against Dr. Scruggs, $30,000 against Kaiser Foundation Hospitals and $30,000 against Permanente.

Appellants do not challenge the propriety of the award of $7,500 for compensatory damages. However, they contend (1) that the issue of punitive damages should not have been submitted to the jury, and (2) that even assuming punitive damages to be a jury issue, the trial court committed prejudicial error in its instructions on this subject. Both contentions are sound.

### I. *The evidence was insufficient to support a verdict for punitive damages.*

Civil Code section 3294 provides that "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." The cases interpreting section 3294 make it clear that in order to warrant the allowance of punitive damages the act complained of must not only be wilful in the sense of intentional, but it must also be accompanied by aggravating circumstances, amounting to malice. The malice required implies- an act conceived in a spirit of mischief or with criminal indifference towards the obligations owed to others. *There must be an intent to vex, annoy or injure.* Mere spite or ill will is not sufficient; and mere negligence, *even gross negligence is not sufficient to justify an award of punitive damages.* (*Read* v. *Turner* (1966) 239 Cal.App.2d 504, 515-516 [48 Cal.Rptr. 919, 40 A.L.R.3d 237]; *Ellis* v. *City Council* (1963) 222 Cal.App.2d 490, 498-499 [35 Cal.Rptr. 317]; *Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517, 526-527 [322 P.2d 933].)

The cases also point out that the only form of malice contemplated by Civil Code section 3294, which creates the right to exemplary damages,

is *malice in fact. (Davis* v. *Hearst* (1911) 160 Cal. 143 [116 P. 530]; *Wolfsen* v. *Hathaway* (1948) 32 Cal.2d 632 [198 P.2d 1].) ■ Under general definition, malice in fact denotes ill will on the part of the defendant, or his desire to do harm for the mere satisfaction of doing it. In ultimate analysis, malice in fact is malice of evil motive *(Davis* v. *Hearst, supra*; 14 Cal.Jur.2d § 176, pp. 810-811).

■ In the instant case there is simply no evidence that any of the appellants were guilty of malice, either "express or implied." On the contrary, the record negates any conclusion that the unauthorized operation on respondent's person took place out of evil motive or criminal indifference by appellants, or with an intent to injure or do harm to respondent for the mere satisfaction of doing it.

Dr. Scruggs' action was admittedly negligent, amounting to a technical battery. However, the facts disclose that he did not know that he was operating on the wrong person. Thus, due to inadvertence, he was acting under a mistake of fact. ■ Punitive damages are not recoverable where a person, acting in good faith, commits the tort of battery under a mistake of fact. *(Wolfsen* v. *Hathaway, supra; Heinze* v. *Murphy* (1942) 180 Md. 423 [24 A.2d 917]; Prosser on Torts (3d ed.) p. 34.)

■ There is a further error with respect to the award of punitive damages against Permanente, the employer of Dr. Scruggs. ■ It is well settled that while an employer may be held liable for an employee's tort under the doctrine of *respondeat superior,* he is not responsible for punitive damages where he neither directed nor ratified the act. *(Warner* v. *Southern Pacific Co.* (1896) 113 Cal. 105 [45 P. 187]; *Deevy* v. *Tassi* (1942) 21 Cal.2d 109, 125 [130 P.2d 389]; *McInerney* v. *United Railroads* (1920) 50 Cal.App. 538 [195 P. 958]; *Alterauge* v. *Los Angeles Turf Club* (1950) 97 Cal.App.2d 735 [218 P.2d 802]; 2 Witkin, Summary of Cal. Law (1960) Torts, § 398, p. 1603.) ■ In the case at bar there is no evidence whatever that any partner or managing agent of Permanente directed, authorized or subsequently ratified any alleged malicious conduct of any employee with knowledge as to the malicious quality of such act or conduct.

II. *The trial court committed prejudicial error in its instructions to the jury on the issue of punitive damages.*

■ (1) The trial court twice instructed the jury in the following language: "You are further instructed, in addition to any actual damages under the second cause of action, if you find that there were any, you may award exemplary damages to the plaintiff in case you should find that the

wrongful acts, if any, by the defendants, or any of them, causing such actual damages were committed in a wanton, wilful *or* reckless manner, *or* in case you find such acts were committed wantonly, recklessly and without due regard to the rights of the plaintiff, *or,* if you find the wrongful acts of the defendants, or any of them, causing such damages were from any bad motive *or* so recklessly done as to imply a disregard for the obligations and rights of the plaintiff." (Italics added.)

The above instruction, couched in the alternative, was prejudicially erroneous because the jury was allowed to award punitive damages thereunder if it found that the wrongful act of appellants was "wilful" or "reckless" or "wanton" or "so recklessly done as to imply a disregard for the obligations and rights of the plaintiff." Under this reasoning, punitive damages would be allowable in any case of a wilful or reckless act or conduct without the required aggravating circumstances amounting to malice *(Gombos* v. *Ashe, supra).*

(2) Specifically directing the attention of the jury to the subject of punitive damages, the court gave the following instruction: "A master, or employer, may be liable for the wilful and malicious acts of a servant within the scope of his employment. It is not necessary that a specific act, or failure to act, be authorized as such by the principal to bring it within the scope of the agent's authority. It is within the scope of his authority if it is done while the agent is engaged in the transaction of business which has been assigned to him for attention by his principal, and while the agent is doing any reasonable thing which his contract of employment expressly or impliedly authorizes him to do, and which may be—reasonably be said to have been contemplated by the contract as necessary, or probably incidental to the employment."

This instruction which is germane only to the issue of *respondeat superior* has no application to the question of an employer's liability for punitive damages. In other words, an employer may be liable for the wilful and/or malicious acts of his employee and thereby responsible for compensatory damages. It does not follow ipso facto, however, that the employer is also subject to an award of punitive damages.

As we have pointed out, to hold the employer responsible for punitive damages it must be shown that the employee's malicious acts were done with the knowledge, or under the direction, of the employer or were ratified by him with knowledge of the wilful and malicious quality of such acts *(McInerney* v. *United Railroads, supra,* 50 Cal.App. at p. 549).

The portion of the judgment awarding plaintiff compensatory damages on the first cause of action is affirmed; the portion of the judgment award-

ing punitive damages against appellants Scruggs and Permanente on the second cause of action is reversed with directions to grant their motion for judgment notwithstanding the verdict and to enter judgment in their favor accordingly. The appeal of Rabkin and Kaiser is dismissed. Each appellant to recover costs.

Taylor, P. J., and Rouse, J., concurred.

On January 26, 1972, the judgment was modified to read as printed above.