49 Cal.App.3d 22 (1975)
122 Cal. Rptr. 218
G.D. SEARLE & COMPANY, Petitioner,
v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent; SANDRA KAY SEATON, Real Party in Interest.
Docket No. 14999.
Court of Appeals of California, Third District.
June 10, 1975.
*24 COUNSEL
McCutchen, Black, Verleger & Shea, Winchester Cooley III, David P. Peterson and William H. Hight for Petitioner.
No appearance for Respondent.
Fitzwilliam, Memering, Stumbos & DeMers, Douglas Drake and John R. Weber for Real Party in Interest.
OPINION
FRIEDMAN, J.
This is one of the exceptional cases justifying a mandamus action to review a ruling on demurrer. (Babb v. Superior Court (1971) 3 Cal.3d 841, 851 [92 Cal. Rptr. 179, 479 P.2d 379].)
Petitioner G.D. Searle & Company (Searle), a pharmaceutical manufacturer, is a defendant in a superior court action brought by Sandra Kay Seaton (plaintiff). Plaintiff sues Searle together with Ortho Pharmaceutical Corporation (Ortho) and a doctor, alleging pathological *25 effects caused by oral contraceptives manufactured and sold by the two drug firms. The amended complaint is drawn in three counts. The first count is framed on a theory which appears to combine elements of strict liability, fraud and failure to warn; it contains allegations designed to justify general and exemplary damages. The second count, sounding in negligence, supplies an alternative basis for the general damage claim. The third count is aimed at the doctor, not at the pharmaceutical firms, and is not involved here.
(1a) Searle filed a general and special demurrer aimed at (a) sufficiency of the exemplary damage allegations and (b) at absence of allegations to satisfy the statute of limitations. The trial court overruled the demurrer and Searle sought review here. The amended complaint is defective in both respects raised by the demurrer. The trial court erred in overruling the demurrer and we shall issue a writ of mandate directing it to vacate its order and to enter an order sustaining the demurrer but granting plaintiff leave to amend her complaint. We consider the statute of limitations question first.

I
Plaintiff alleges that she purchased and used products manufactured by Searle and Ortho between April 1, 1962, and July 18, 1968, as a result of which she suffered physical and emotional trauma, some of which she specifically describes. Her lawsuit was filed on March 8, 1974, somewhat less than six years after her last use of these products.
(2) Personal injury actions based upon products liability are governed by the one-year period of limitations prescribed by Code of Civil Procedure section 340, subdivision 3. (Warrington v. Charles Pfizer & Co. (1969) 274 Cal. App.2d 564-566 [80 Cal. Rptr. 130]; Howe v. Pioneer Mfg. Co. (1968) 262 Cal. App.2d 330-339 [68 Cal. Rptr. 617]; Cotchett & Cartwright, Cal. Products Liability Actions, § 8.02.) (3) Generally, a personal injury claim accrues and the period of limitations commences when the wrongful act takes place. An exception is presented when the pathological effect occurs without perceptible trauma and the victim is "blamelessly ignorant" of the cause of injury; in that case, the statute of limitations does not begin to run until the person knows or, by the exercise of reasonable diligence, should have discovered the cause of injury. (Coots v. Southern Pacific Co. (1958) 49 Cal.2d 805 [322 P.2d 460]; Warrington v. Charles Pfizer & Co., supra, 274 Cal. App.2d at pp. 567-571; Anderson v. Southern Pac. Co. (1964) 231 Cal. App.2d 233, 240 *26 [41 Cal. Rptr. 743]; see Note, 4 A.L.R.3d 821.) A plaintiff who relies on this exception must plead facts justifying delayed accrual; the complaint must allege (1) the time and manner of discovery and (2) the circumstances excusing delayed discovery. (Bradler v. Craig (1969) 274 Cal. App.2d 466, 471-472 [79 Cal. Rptr. 401]; Weinstock v. Eissler (1964) 224 Cal. App.2d 212, 227-228 [36 Cal. Rptr. 537]; 3 Witkin, Cal. Procedure, Pleading, §§ 781, 782.)
(1b) By indirection, the present complaint sufficiently avers plaintiff's unawareness of the oral contraceptives' deleterious effect when she was using them. It fails to allege when she made the discovery, the circumstances of discovery and why, in the exercise of reasonable diligence, she could not have made the discovery sooner. By failing to bring plaintiff within the exception to the general rule, the complaint left her vulnerable to the general rule which fixes accrual of the cause of action at the time of the tortious act. On its face the complaint shows a claim which is barred by the one-year statute. (Weinstock v. Eissler, supra, 224 Cal. App.2d at p. 229.) The trial court erred in overruling the general demurrer filed by Searle.

II
We turn to the exemplary damage issue. In California the award of damages by way of example or punishment is controlled by Civil Code section 3294, which authorizes that kind of award against a tortfeasor who has been guilty of "oppression, fraud or malice, express or implied." A products liability action generated by the adverse physical effects of pharmaceuticals may furnish the occasion for the award, provided that the supplier's conduct satisfies the exemplary damage criterion of the particular jurisdiction.[1]
The averments designed to support plaintiff's claim for exemplary damage appear in two portions of the complaint's first count. In paragraph XVI plaintiff alleges: "At the time of plaintiff being prescribed, sold and using the products of the defendants [Searle and *27 Ortho], the product was defective as a result of defendants' failure to give directions and warning as to the use of the product to prevent it from being dangerous and unsafe for its intended purpose in that such products could cause blood clotting and the type of injury which plaintiff in fact sustained and which is subsequently set forth herein."
After averments of plaintiff's physical injuries (including thrombophlebitis and multiple pulmonary emboli) and of causation, paragraph XX declares: "Plaintiff is informed and believes and upon such information and belief alleges that defendants [Searle and Ortho] knew that the products, of the type to which the defective products belong, were defective in the manner in which alleged in Paragraph XVI; that defendants ... willfully and knowingly placed them on the market and knew that they would be sold to, prescribed and used by members of the general public without knowledge of the hazards attendant thereto by the purchasers and users; that defendants ... knew and implicitly represented by the defective products' presence on the market that they could safely do the jobs for which they were developed; and that defendants ... wrongfully, knowingly, and willfully acted in complete disregard of plaintiff's implicit reliance upon defendants' implicit representations of safety and for which plaintiff seeks punitive damages in the amount of $2,000,000.00."
These opaque, unstable and compound averments evade reduction to exactitude. Seemingly, they are designed to charge that the two pharmaceutical firms refrained from publishing warnings of their products' potential for physical damage despite their awareness of danger in products of this "type" and their awareness that users would regard the absence of warnings as an implicit assurance of the products' safety. Completely lacking is any allegation that the manufacturers knew that their implied assurances of safety were false. Indeed, the complaint alleges  contrary to the pleader's supposed objective  that the manufacturers knew that their products could "safely do the jobs." Quite aside from the egregious uncertainty of these allegations, we have concluded that they fail to plead a claim for exemplary damage.
Oppression, for the purpose of the exemplary damage statute, has been defined as cruel and unjust hardship. (Richardson v. Employers Liab. Assur. Corp. (1972) 25 Cal. App.3d 232, 246 [102 Cal. Rptr. 547]; Roth v. Shell Oil Co. (1960) 185 Cal. App.2d 676, 681-682 [8 Cal. Rptr. 514].) Plaintiff doesn't contend that her allegations amount to a charge of oppression. In the trial court she argued that fraud was the gravamen of *28 her punitive award claim. Indeed, in its mandate petition to this court, Searle sought to demonstrate the complaint's inadequacy as a fraud pleading. In this court plaintiff has shifted position, contending that the complaint sufficiently pleads malice as a basis for the award.
Plaintiff relies heavily upon Toole v. Richardson-Merrell Inc., supra, 251 Cal. App.2d 689. She argues that her complaint sufficiently conforms to the demands of the exemplary damage statute, as construed in Toole v. Richardson-Merrell Inc., by charging the defendants with reckless disregard of potential danger to consumers.
In Toole the court sustained an award of exemplary damages against a pharmaceutical manufacturer for injuries caused by its product. The manufacturer had falsely represented its laboratory findings to the federal Food and Drug Administration. According to the Toole opinion, the complaint was based upon theories of negligence, breach of express warranty and breach of implied warranty. (251 Cal. App.2d at p. 702.) At a later point the writer of the Toole opinion mentions "strict liability" but in the context of breach of implied warranty. (Id., at pp. 709-710.) Toole, the plaintiff, had sought punitive damages; the trial court instructed on malice as "an act conceived in a spirit of mischief or with criminal indifference...." The appellate court found evidence to sustain the jury's finding of malice. Although Civil Code section 3294 confines exemplary damages to actions "not arising from contract," the Toole opinion does not lodge the exemplary award under any particular heading of noncontractual recovery. The Toole case has been widely discussed by products liability commentators without noting the absence of a doctrinal tie-up between the theory of recovery and the theory of the exemplary damage award. (Dixon, op. cit., fn. 1; Swartz, op. cit., fn. 1; Rheingold, op. cit., 56 Cal.L.Rev., at pp. 134-137.)
In Toole, the court declared: "... [M]alice in fact, sufficient to support an award of punitive damages ... may be established by a showing that the defendant's wrongful conduct was wilful, intentional, and done in reckless disregard of its possible results. Where, as here, there is evidence that the conduct in question is taken recklessly and without regard to its injurious consequences, the jury may find malice in fact.... Such malice is consistent with a personal intent to injure those affected by the defendant's conduct." (251 Cal. App.2d at p. 713.)
A preliminary inquiry is whether a pleading of malice as a basis for exemplary damages should be judged by the relatively strict standards *29 governing an inquiry into jury instructions or evidentiary support for a jury award. Notwithstanding relaxed pleading criteria, certain tortious injuries demand firm allegations. Vague, conclusory allegations of fraud or falsity may not be rescued by the rule of liberal construction. (3 Witkin, Cal. Procedure (2d ed.) Pleading, §§ 574, 583-584.) (4) When the plaintiff alleges an intentional wrong, a prayer for exemplary damage may be supported by pleading that the wrong was committed willfully or with a design to injure. (James v. Herbert (1957) 149 Cal. App.2d 741, 750 [309 P.2d 91].) When nondeliberate injury is charged, allegations that the defendant's conduct was wrongful, willful, wanton, reckless or unlawful do not support a claim for exemplary damages; such allegations do not charge malice. (Cohen v. Groman Mortuary, Inc. (1964) 231 Cal. App.2d 1, 8 [41 Cal. Rptr. 481]; Gombos v. Ashe (1958) 158 Cal. App.2d 517, 526-529 [322 P.2d 933].) When a defendant must produce evidence in defense of an exemplary damage claim; fairness demands that he receive adequate notice of the kind of conduct charged against him.
(5) In order to test plaintiff's allegations as a charge of malice, it is necessary to observe the elements of the malice which justifies an exemplary award. At this point one discovers a plethora of appellate elucidations. California courts have indulged in a profusion of pejorative terms to describe malice. A survey reveals several separate and somewhat divergent currents of California case law.
A mainstream of case law descends from Davis v. Hearst (1911) 160 Cal. 143 [116 P. 530]. There the court defined malice as the basis for exemplary damages in a libel action, declaring: "It should be apparent that the malice, and the only malice, contemplated by section 3294 is malice in fact, and that the phrase `express or implied' has reference only to the evidence by which that malice is established; express malice thus meaning that the malice is established by express or direct evidence going to prove the actual existence of the hatred and ill-will; implied malice referring to the indirect evidence from which the jury may infer the existence of this malice in fact.... [I]t is only upon some showing regarded by the law as adequate to establish the presence of malice in fact, that is the motive and willingness to vex, harass, annoy, or injure, that punitive damages have ever been awarded.... ¶ And while in the cases this malice, the existence of which we have declared to be essential to a recovery in punitive damages, is sometimes called express malice, sometimes actual malice, sometimes real malice, and sometimes true malice, it is always in its analysis malice of the one kind, the malice of evil motive.... ¶ [T]he animus malus must be shown to exist in every *30 case before an award in punitive damages may be made against a defendant, since the evil motive is the controlling and essential factor which justifies such an award, ..." (160 Cal. at pp. 162-164.)
Animus malus or evil motive, then, is the central element of the malice which justifies an exemplary award. A long line of California decisions rests upon express or implied acceptance of the Davis v. Hearst formulation.[2]
Consistent adherence to the Davis v. Hearst formulation is not troublesome when the plaintiff charges a deliberate tort. Malice extends beyond deliberate injury and may characterize aggravated and culpable instances of nondeliberate conduct. A second decisional current appears, explicating malice in the context of nondeliberate injury. Here new verbalisms emerge. A dictum in Donnelly v. Southern Pacific Co. (1941) 18 Cal.2d 863, 869-870 [118 P.2d 465], describes wanton and reckless misconduct as synonymous with the malice which justifies the award. Similar pronouncements utilize recklessness as a descriptive term, but only in combination with other pejorative descriptions, such as wantonness, willfulness, intent and conscious disregard of danger.[3]
As an offshoot of the latter decisional line, a third group of cases contain ratio decidendi or dicta indicative of a less stringent standard. They utilize reckless misconduct and reckless disregard as terms with the independent capacity to sustain exemplary damage awards.[4] The later *31 decisions assume, without analysis, that reckless disregard of the consequences completely satisfies the statutory concept of malice. In contrast is a fourth group of decisions which distinctly reject recklessness as an independent basis for a finding of malice.[5]
In attempting to draw a consistent theme from these verbal elaborations one is struck by the synonymity sometimes ascribed to nonsynonymous terms. Typical is Toole v. Richardson-Merrell, supra. There the court declares that malice may be established by evidence of conduct which is "wilful, intentional and done in reckless disregard of its possible results." (251 Cal. App.2d at p. 713.) According to dictionary definitions, willfulness and intent denote deliberation or design; recklessness, in contrast, connotes action which is insensate, heedless or negligent. To apply these adjectives conjunctively to a single course of conduct is self-contradictory. "If conduct is negligent, it is not willful; if it is willful, it is not negligent." (Donnelly v. Southern Pacific Co., supra, 18 Cal.2d at p. 869.)
Another tendency exhibited by the California decisions results from the failure to distinguish between conjunctive and disjunctive descriptions. However vulnerable on logical grounds, Toole v. Richardson-Merrell and similar decisions[6] posit recklessness as part of a collective description of malice, coupling it with companion terms, e.g., willfulness, deliberation, wantonness, conscious disregard of the consequences. Other opinion writers fail to heed the collective character of these descriptions. They break down the bundle, extracting from it a partial description  for example, recklessness or reckless disregard  as an independent, self-sustaining equivalent of malice.[7]
One must be careful to consult the statute as well as its interpreters. As explicated in Davis v. Hearst, supra, section 3294 views evil motive as the central, essential factor in the malice which justifies an exemplary award. That factor calls upon the jury to assess the defendant's actual state of mind; it is not satisfied by characterizing his conduct as unreasonable, negligent, grossly negligent or reckless. (See Franson, op. cit., 50 State Bar J. at pp. 146-148; fn. 3, ante.) The accretion of judicial definitions of malice has pushed to the fore a number of imprecise verbal signals *32 which  by color, nuance and suggestion  invite the jury to punish the defendant for violating the jurors' standards rather than the law's. Among these imprecise renditions of the statute are the terms reckless disregard and reckless misconduct. On the assumption that these terms reflect the statutory concept in any degree, their use in isolation distorts the statute. The central spirit of the exemplary damage statute, the demand for evil motive, is violated by an award founded upon recklessness alone.[8]
The incessant production of shifting decisional definitions may spring from judicial restlessness with the Davis v. Hearst formula. Verbalisms coined in a libel action may seem unsuitable for a products liability suit involving claims of commercial callousness in the manufacture, advertisement and nationwide distribution of allegedly dangerous pharmaceuticals. If suits of the present variety call for a restatement of the traditional concept, one is at hand. The phrase conscious disregard is sometimes used to describe the highly culpable state of mind which justifies an exemplary award. The majority opinion in Silberg v. California Life Ins. Co., supra, 11 Cal.3d at page 462, declares: "In order to justify an award of exemplary damages, the defendant must be guilty of oppression, fraud or malice. (Civ. Code, § 3294.) He must act with the intent to vex, injure or annoy, or with a conscious disregard of the plaintiff's rights."
In a personal injury action the notion of conscious disregard of the safety of others logically may be substituted for that of disregard of the rights of others. We suggest conscious disregard of safety as an appropriate description of the animus malus which may justify an exemplary damage award when nondeliberate injury is alleged.
(1c) The complaint does not charge Searle with knowledge of the dangerous potential of its product, but only with awareness that unspecified products of this "type" might cause injury. It does not allege that Searle knew its implicit representations of safety were false; inconsistently enough  perhaps fortuitously  it alleges that Searle knew that its products "could safely do the jobs." Its allegation of wrongful, knowing and willful conduct is conclusory. It fails to allege, directly or in equivalent terms, that Searle either intended to injure consumers of its product or acted in conscious disregard of their safety. It fails to plead *33 malice as a ground for the exemplary award. The trial court erred in overruling the demurrer.
Let a peremptory writ of mandate issue directing the court to vacate its order overruling Searle's demurrer to the complaint and to sustain said demurrer with leave to amend.
Puglia, P.J., and Janes, J., concurred.
NOTES
[1] See Roginsky v. Richardson-Merrell, Inc. (2d Cir.1967) 378 F.2d 832; Toole v. Richardson-Merrell Inc. (1967) 251 Cal. App.2d 689 [60 Cal. Rptr. 398, 29 A.L.R.3d 988]; see also, 3 Frumer and Friedman, Products Liability, § 33.01[7]; Dixon, Drug Product Liability, § 9.07[2]; Swartz, Hazardous Products Litigation, § 7:6; Rheingold. The MER/29 Story  An Instance of Successful Mass Disaster Litigation (1968) 56 Cal.L.Rev. 116, 134; cf. Wennerholm v. Stanford Univ. Sch. of Med. (1942) 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358]; Comment, Strict Liability in Tort: Its Applicability to Manufacturers of Prescription Drugs (1974) 7 U.C.Davis L.Rev. 487.
[2] See Bertero v. National General Corp. (1974) 13 Cal.3d 43, 66 [118 Cal. Rptr. 184, 529 P.2d 608], Silberg v. California Life Ins. Co. (1974) 11 Cal.3d 452, 462 [113 Cal. Rptr. 711, 521 P.2d 1103]; Wolfsen v. Hathaway (1948) 32 Cal.2d 632, 647 et seq. [198 P.2d 1] (overruled on another ground in Flores v. Arroyo (1961) 56 Cal.2d 492, 497 [15 Cal. Rptr. 87, 364 P.2d 263]: Fidelity etc. Co. v. Federal etc. Co. (1933) 217 Cal. 307, 319 [18 P.2d 950]; Ebaugh v. Rabkin (1972) 22 Cal. App.3d 891 [99 Cal. Rptr. 706]; Gruner v. Barber (1962) 207 Cal. App.2d 54, 64 [24 Cal. Rptr. 292]; McAfee v. Ricker (1961) 195 Cal. App.2d 630, 633-634 [15 Cal. Rptr. 920]; Roth v. Shell Oil Co. (1960) 185 Cal. App.2d 676, 682 [8 Cal. Rptr. 514]; Gombos v. Ashe, supra, 158 Cal. App.2d at pp. 526-527; Ross v. Sweeters (1932) 119 Cal. App. 716, 724 [7 P.2d 334].
[3] Schroeder v. Auto Driveaway Co. (1974) 11 Cal.3d 908, 922 [114 Cal. Rptr. 622, 523 P.2d 662]; Ebaugh v. Rabkin, supra, 22 Cal. App.3d at pp. 895-896; Black v. Shearson, Hammill & Co. (1968) 266 Cal. App.2d 362, 369 [72 Cal. Rptr. 157]; Toole v. Richardson-Merrell Inc., supra, 251 Cal. App.2d at p. 713; Cohen v. Groman Mortuary, Inc., supra, 231 Cal. App.2d at p. 9; Roth v. Shell Oil Co., supra, 185 Cal. App.2d at p. 682; Gombos v. Ashe, supra, 158 Cal. App.2d at pp. 526-530; see generally, Franson, Exemplary Damages in Vehicle Accident Cases (1975) 50 State Bar.J. 93.
[4] Templeton Feed & Grain v. Ralston Purina Co. (1968) 69 Cal.2d 461, 471 [72 Cal. Rptr. 344, 446 P.2d 152]; Dorsey v. Manlove (1860) 14 Cal. 553, 556; Sturges v. Charles L. Harney, Inc. (1958) 165 Cal. App.2d 306, 322 [331 P.2d 1072]; McDonell v. American Trust Co. (1955) 130 Cal. App.2d 296, 299 [279 P.2d 138].
[5] Ebaugh v. Rabkin, supra, 22 Cal. App.3d at page 896: Gombos v. Ashe, supra, 158 Cal. App.2d at page 530.
[6] See cases collected, footnote 3, ante.
[7] See cases collected, footnote 4, ante.
[8] See cases cited footnote 5, ante.