[No. B006504. Second Dist., Div. Three. May 3, 1985.]

PATRICIA MAGALLANES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
E. R. SQUIBB & SONS, INC., et al., Real Parties in Interest.

COUNSEL

Schlifkin & Papell, Robert S. Schlifkin and Steven J. Kleifield for Petitioner.

No appearance for Respondent.

Haight, Dickson, Brown & Bonesteel, Robert L. Dickson, Steven L. Hoch, Ralph A. Campillo, Debra E. Pole, Robert L. Kaufman, Crosby, Heafey, Roach & May, Richard J. Heafey, Peter W. Davis, James C. Martin, Overton, Lyman & Prince, Laurence H. Schnabel, Stephen E. Traverse, Donald B. Caffray, Gary D. Fields, Burris, Karp & Mooney, Donald S. Burris, Adams, Duque & Hazeltine, Richard T. Davis, Jr., Gantz & Forer, Steven B. Stevens, Chase, Rotchford, Drukker & Bogust, Howard A. Slavin, Gibson, Dunn & Crutcher, G. Edward Fitzgerald and Eric C. McCurdy for Real Parties in Interest.

Michael J. Breining and David G. Owen as Amici Curiae on behalf of Real Parties in Interest.

OPINION

**DANIELSON, J.—** ◼ The question presented by this petition for writ of mandate is whether punitive damages may be awarded in a case based on the market share theory of liability enunciated in *Sindell* v. *Abbott Laboratories* (1980) 26 Cal.3d 588 [163 Cal.Rptr. 132, 607 P.2d 924, 2 A.L.R.4th 1061] (cert. den. 499 U.S. 912 [66 L.Ed.2d 140, 101 S.Ct. 286]) (*Sindell*). We conclude they may not.

FACTS

Petitioner Patricia Magallanes is the plaintiff in an action to recover damages for injuries she allegedly sustained, the development of cancer, by reason of her mother's ingestion of the drug diethylstilbestrol (DES) while

plaintiff was *in utero*. The defendants and real parties in interest (defendants) are the alleged manufacturers and distributors of a substantial share of the DES available to plaintiff's mother at the time she ingested the substance.

In the first and fourth causes of action of her first amended complaint, plaintiff alleged, inter alia, that in manufacturing and distributing the DES the defendants acted with conscious disregard of the rights and safety of the general public; in her prayer she sought punitive, as well as compensatory, damages.

On August 11, 1983, the respondent trial court granted defendants' motions to strike plaintiff's punitive damage allegations. (Code Civ. Proc., § 436.) The court granted plaintiff leave to move to amend to allege such damages at any time more than six months prior to trial, and suggested that she conduct further discovery prior to so moving. The court ruled "that there should be identification of a particular defendant before punitive damages may be alleged." Plaintiff's subsequent motion for reconsideration was heard and denied.

This petition for writ of mandate seeks to compel the trial court to vacate its order of August 11, 1983, granting defendants' motions to strike the punitive damage allegations from the first amended complaint, and to enter a new order denying the motions to strike. We issued an alternative writ of mandate.

### CONTENTIONS

Plaintiff contends "that under established California law, and under the persuasive reasoning" of *Morris* v. *Parke, Davis & Co.* (C.D. Cal. 1983) 573 F.Supp. 1324 (*Morris*), "punitive damages may be awarded in a 'market share' action" brought pursuant to *Sindell.*

Defendants challenge the timeliness of the petition, the sufficiency of petitioner's allegations of malice, and the persuasiveness of the decision in *Morris,* and controvert plaintiff's contention that punitive damages can be awarded in a *Sindell* type market share action.

### DISCUSSION

*The Petition Was Timely Filed*

Defendants contend plaintiff's motion for reconsideration failed to comply with the requirements of Code of Civil Procedure section 1008,

subdivision (a), in that the motion was made more than 10 days after plaintiff had knowledge of the order granting defendants' motions to strike, and, moreover, was not based upon an alleged different state of facts.

The facts stated by defendants are correct but we find that there is no error. The requirements of Code of Civil Procedure section 1008 are not jurisdictional and do not divest a court of its inherent power to correct its interim rulings. (*Greenberg* v. *Superior Court* (1982) 131 Cal.App.3d 441, 445 [182 Cal.Rptr. 466].)

The order of August 11, 1983, granting the motions to strike, was an interim ruling. The trial court had power to reconsider the ruling so long as no final judgment had been entered and the case was still pending before the court.

We find no abuse of discretion in the trial court's decision to entertain the motion for reconsideration. (*Blue Mountain Development Co.* v. *Carville* (1982) 132 Cal.App.3d 1005, 1013 [183 Cal.Rptr. 594].)

*The Allegations of the First Amended Complaint Are Sufficient to Support a Claim for Punitive Damages*

■ In its order granting defendants' motions to strike, the trial court ruled that the "[f]acts alleged at page 8, lines 1-12 [of the first amended complaint] are not sufficient to support a claim for punitive damages." In their return to the petition, certain of the defendants point to plaintiff's failure to amend to allege any additional facts supporting her claim for punitive damages.

At the outset of the August 11, 1983, hearing on the motions to strike, the trial court read into the record its proposed order, which included its ruling that the allegations supporting the claim for punitive damages were insufficient. Plaintiff then called the court's attention to the allegations contained in paragraphs XI and XII of the first amended complaint, and the court then ruled that the pertinent allegations in the complaint[1] were prob-

---

[1]The paragraphs read as follows:

"XI

"At all times herein mentioned, the Defendants, and each of them, had knowledge of the dangerous and defective condition and propensities of the drug diethylstilbestrol, to wit, that it:

"a. Did not provide a medically safe method to prevent an abortion or miscarriage of the mother's expected baby;

"b. That it did cause injury to either the mother or to her expected baby;

"c. That it was not properly prepared;

"d. That it did not permit simple efficient treatment of habitual and threatened abortions;

ably sufficient to support a claim for punitive damages. However, the court's original proposed ruling was incorporated into its minute order of August 13, 1983, with additional language requiring identification of a particular defendant before punitive damages may be sought.

In order to justify an award of punitive damages, the defendant must be guilty of oppression, fraud or malice. (Civ. Code, § 3294.)[2] "He must act with the intent to vex, injure or annoy, or with a conscious disregard of the plaintiff's rights." (*Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452, 462 [113 Cal.Rptr. 711, 521 P.2d 1103].) In a personal injury action, *"conscious disregard of safety* [is] an appropriate description of the *animus malus* which may justify an exemplary damage award when nondeliberate injury is alleged." (Italics in original.) (*G. D. Searle & Co.* v. *Superior Court* (1975) 49 Cal.App.3d 22, 32 [122 Cal.Rptr. 218]; see also *Taylor* v. *Superior Court* (1979) 24 Cal.3d 890, 895 [157 Cal.Rptr. 693, 598 P.2d 854].) The allegations in the complaint, reproduced in the margin, are sufficient to support a prayer for punitive damages.

*Punitive Damages May Not Be Imposed in a Market Share Liability Case*

■ The remaining, and essential question in this appeal is whether punitive damages can be imposed in an action in which liability is based

---

"e. That it was not effective in saving fetuses;

"f. That it could not be used safely in the prevention and control of complications of pregnancy.

"However, Defendants, with the express approval, authority, cooperation, permission and ratification of DOES I through CC, manufactured, compounded, packaged, designed, distributed, tested, constructed, fabricated, analyzed, recommended, merchandised, advertised, promoted and sold for consideration a certain drug product known as diethylstilbestrol and its component parts, ingredients and constituents for sale to and use by members of the medical profession and the general public.

"XII

"That the conduct of Defendants was carried out with the express approval, authority, cooperation, permission and ratification of DOES I through CC, in carrying out established company policy and was at all times engaged in, with conscious disregard of the rights and safety of the general public, who Defendants, and each of them, knew would be the ultimate recipients and users of the product in that the Defendants referred to herein knew that the drug diethylstilbestrol would cause and did, in fact, cause serious injury to the female offspring of women when used for the purpose for which they intended it to be used."

[2]Civil Code section 3294 provides in part: "(a) In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

" .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(c) As used in this section, the following definitions shall apply:

"(1) 'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or conduct which is carried on by the defendant with a conscious disregard of the rights or safety of others.

"(2) 'Oppression' means subjecting a person to cruel and unjust hardship in conscious disregard of that person's rights."

upon market share. We begin our discussion by recognizing that the complaint in *Sindell* also contained a prayer for punitive damages as well as for compensatory damages. This fact was announced early in the decision (*Sindell, supra,* 26 Cal.3d at p. 595) and not thereafter mentioned.

Defendants claim that the omission of reference to punitive damages thereafter indicates that the compensatory damage remedy fashioned by *Sindell* is the sole remedy available to a plaintiff who has been harmed by fungible goods, such as DES, whose producer the plaintiff cannot identify.

Plaintiff argues the theory of liability based on market share enunciated in *Sindell* is "little more than an extension," or "basically a slight adaptation," of the doctrine of *Summers* v. *Tice* (1948) 33 Cal.2d 80 [199 P.2d 1, 5 A.L.R.2d 91]. In her petition plaintiff assumes that both *Sindell* and *Summers* are joint tortfeasor cases and characterizes them as such.

The entire *Sindell* opinion is cast in the context of compensatory damages. Save for the initial mention of the plaintiff's prayer there is nothing in *Sindell* that relates to punitive damages. The entire opinion is given to the fashioning of a logical and reasonable remedy which would enable the plaintiff to be compensated for the cost of her injuries.

We also note that *Summers* does not relate to punitive damages. It is limited to who should be liable for compensatory damages in the circumstances of that case.

Last, we note that neither *Sindell* nor *Summers* is a joint tortfeasor case. *Summers* is an independent tortfeasor case based upon the theory of alternative liability, while *Sindell* is an independent tortfeasor case based upon the new theory of market share liability.

The court in *Sindell* acknowledged the propriety of some adaptation of the rules of causation and liability to meet the changing needs of contemporary consumers harmed by fungible goods which cannot be traced to a specific producer. The court reasoned that "as between an innocent plaintiff and negligent defendants, the latter should bear the cost of the injury." (26 Cal.3d pp. 610-611.) From a broader policy standpoint, defendants such as drug manufacturers "are better able to bear the cost of injury resulting from the manufacture of a defective product." (*Id.,* at p. 611.) Moreover, "'. . . the risk of injury can be insured by the manufacturer and distributed among the public as a cost of doing business.' [Citations.] The manufacturer is in the best position to discover and guard against defects in its products and to warn of harmful effects; thus, holding it liable for defects and failure to

warn of harmful effects will provide an incentive to product safety. [Citations.]" (*Ibid.*)

Reiterating its belief that an undiluted *Summers* rationale is inappropriate to shift the burden of proof of causation in a case such as this (26 Cal.3d p. 611), the *Sindell* court approached the issue of causation from a different perspective, reasoning: "If plaintiff joins in the action the manufacturers of a substantial share of the DES which her mother might have taken, the injustice of shifting the burden of proof to defendants to demonstrate that they could not have made the substance which injured plaintiff is significantly diminished." (*Id.,* at p. 612.)

Under the market share theory, compensatory damages are apportioned among the defendants in accordance with the share each had of the appropriate market, unless any of the defendants prove they could not have made the product which caused plaintiff's injuries. (26 Cal.3d p. 612.)

The question before us is whether the rationale of *Sindell* for shifting the burden of proof of causation to the defendants, based upon their share of the market, for the purposes of compensatory damages, should be applied to permit plaintiff to seek punitive damages as well. The question is one of first impression in this state.

Plaintiff relies on *Morris,* which held that punitive damages may be sought in a market share liability case controlled by California law. We look to the court's reasoning for its persuasive effect. The court in *Morris* considered the functions of punitive damages, primarily "punishment and deterrence of like conduct by the wrongdoer and others" (*Grimshaw* v. *Ford Motor Co.* (1981) 119 Cal.App.3d 757, 810 [174 Cal.Rptr. 348]; Owen, *Punitive Damages in Products Liability Litigation* (1976) 74 Mich.L.Rev. 1257, 1277-1287), and secondarily, the inducement of private persons to assist in enforcing the rules of law, as well as their further compensation in cases where actual damages may exceed those recoverable under the law or be substantially depleted by attorneys' fees. (Owen, *supra,* at p. 1278.)

Recognizing that the California courts have consistently upheld the right of plaintiffs to recover punitive damages in products liability cases (*Hasson* v. *Ford Motor Co.* (1982) 32 Cal.3d 388, 402-403 [185 Cal.Rptr. 654, 650 P.2d 1171]; *Grimshaw* v. *Ford Motor Co., supra,* 119 Cal.App.3d 757, 810), including those involving defective drugs (*G. D. Searle & Co.* v. *Superior Court, supra,* 49 Cal.App.3d 22, 26; *Toole* v. *Richardson-Merrell Inc.* (1967) 251 Cal.App.2d 689, 713-714 [60 Cal.Rptr. 398, 29 A.L.R.3d 988]), the *Morris* court noted that the deterrent value of punitive damages takes on added importance in an age of mass distribution of goods by man-

ufacturers who "may find it advantageous to accept compensatory damages as a cost of doing business. *Grimshaw* v. *Ford Motor Co., [supra,]* 119 Cal.App.3d at 810 . . .; Owen, *supra* . . ., at 1291, 1292-95." (573 F.Supp., at p. 1327.)

The problem of causation was treated in *Morris* as analogous to that in cases involving the doctrine of respondeat superior, where "an employer is subject to punitive damages for the acts of an employee where the employer knows the employee to be unfit and employs him 'with a conscious disregard of the rights or safety of others.' . . . Civ. Code § 3294(b) . . . ." (573 F.Supp., at p. 1328.)

Unlike *Morris,* we view the employer-employee-victim connection warranting application of the doctrine of respondent superior to be substantially different than the manufacturer-unidentifiable drug-victim connection in *Sindell.* Consequently, we are not persuaded by the reasoning of *Morris.*

Additional public policy considerations must be examined in determining the propriety of punitive damages in a market share liability case. These considerations include the potential for "overkill," whereby early claimants securing large punitive damage awards may exhaust the economic resources of the alleged wrongdoers and may thereby even preclude the satisfaction of awards of compensatory damages, to future claimants.[3] (*Roginsky* v. *Richardson-Merrell, Inc.* (2d Cir. 1967) 378 F.2d 832, 839-840.)

Also, the objectives of punishment and deterrence appear to be sufficiently met by the enormity of the present and prospective awards of compensatory damages, and the objective of deterrence has little relevance where the offending goods have long since been removed from the marketplace.

In *Roginsky* v. *Richardson-Merrell, supra,* 378 F.2d 832, a mass tort case involving an anticholesterol drug, MER/29, which caused adverse effects in some consumers, the court determined that the applicable New York law permitted punitive damages based on causes of action for negligence and fraud. However, the court observed that the several hundred cases pending against the single manufacturer of MER/29 bore little resemblance to the types of actions in which punitive damages have traditionally been awarded, where there were few victims and the prospects for litigation were clearly confined. (*Id.,* at pp. 838-839.)

---

[3]Pertinent to this discussion is the public policy of this state which precludes passing punitive damages to an insurer. (*Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 156-157 [181 Cal.Rptr. 784, 642 P.2d 1305]; *City Products Corp.* v. *Globe Indemnity Co.* (1979) 88 Cal.App.3d 31, 35 [151 Cal.Rptr. 494].)

Another fundamental policy consideration is whether the formulas for imposing liability for, and apportioning compensatory damages are appropriate when punitive damages are sought.

*Sindell* fashioned a new remedy which would enable a consumer, who had been harmed by fungible goods which could not be traced to any specific producer, to recover compensatory damages from the producers of a substantial share of the injury-causing substance which the plaintiff's mother might have taken. The *Sindell* rule shifted the burden of proof of causation to the defendants and also provided the means for apportioning compensatory damages among them. The court stated: "[W]e hold it to be reasonable in the present context to measure the likelihood that any of the defendants supplied the product which allegedly injured plaintiff by the percentage which the DES sold by each of them for the purpose of preventing miscarriage bears to the entire production of the drug sold by all for that purpose. . . . [¶] If plaintiff joins in the action the manufacturers of a substantial share of the DES which her mother might have taken, the injustice of shifting the burden of proof to defendants to demonstrate that they could not have made the substance which injured plaintiff is significantly diminished. . . . [¶] The presence in the action of a substantial share of the appropriate market also provides a ready means to apportion damages among the defendants. Each defendant will be held liable for the proportion of the judgment represented by its share of that market unless it demonstrates that it could not have made the product which caused plaintiff's injuries." (26 Cal.3d at pp. 611-612.)

While the market-share rule of *Sindell* is a substantial departure from previous tort law, it provides a logical and reasonable basis for awarding and apportioning compensatory damages, notwithstanding the inability of a plaintiff to identify the producer who supplied the injury causing substance. Based upon the principle of likelihood, if the named defendants produced 90 percent of the DES marketed, there is a corresponding 90 percent likelihood that they produced the specific DES which injured the plaintiff. The *Sindell* rule is also reasonable based on the public policy considerations set forth above. (26 Cal.3d at pp. 610-611.)

Conversely, considerations significantly different than those relating to compensatory damages, govern the imposition of punitive damages.

Punitive damages are an individualized punishment and deterrent imposed upon a particular and identified defendant whose malicious or oppressive acts are the proximate cause of the injury sustained by the plaintiff. They are intended to punish wrongdoers for acting with malice or oppression (Civ. Code, § 3294, *supra; Neal* v. *Farmers Ins. Exchange* (1978) 21

Cal.3d 910, 928, fn. 13 [148 Cal.Rptr. 389, 582 P.2d 980]), not just because they distribute their products in the marketplace.

The measure of that malice or oppression requires the determination of the state of mind of the particular defendant while committing the alleged wrongful act. While the injury-causing product may be fungible, the states of mind of the different defendants probably are not.

As our Supreme Court has stated: "In making the indicated assessment we are afforded guidance by certain established principles, all of which are grounded in the purpose and function of punitive damages. [Fn. omitted.] One factor is the particular nature of the defendant's acts in light of the whole record; clearly, different acts may be of varying degrees of reprehensibility, and the more reprehensible the act, the greater the appropriate punishment, assuming all other factors are equal. [Citations.]" (21 Cal.3d p. 928.)

Other factors relevant to the computation of punitive damages include the amount of compensatory damages awarded, and the wealth of the particular defendant. (21 Cal.3d p. 928.) (See *Wetherbee* v. *United Ins. Co. of America* (1971) 18 Cal.App.3d 266, 270 [95 Cal.Rptr. 678].)

Since exemplary damages are assessed ". . . against a defendant 'for the sake of example and by way of punishing' him [period omitted] (Civ. Code, § 3294 [period omitted]) [i]t follows that the wealthier the wrongdoing defendant, the larger the award of exemplary damages need be in order to accomplish the statutory objective. [Citations.]" (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 65 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].) "It also follows that the poorer the wrongdoing defendant the smaller the award of punitive damages need be in order to accomplish the statutory objective." (*Merlo* v. *Standard Life & Acc. Ins. Co.* (1976) 59 Cal.App.3d 5, 18 [130 Cal.Rptr. 416].)

Counsel informed us at oral argument that there are hundreds of cases pending nationwide which are similar to the case at bench. It appears that each of the cases has but one plaintiff and all counsel agree that these cases can not be combined into a class action because the cases are too individual in terms of disparity of injury, situs of events, time frame and other individual issues which make it impossible to certify a class. Thus the cases would have to be individually tried.

As a consequence, if punitive damages were imposed, based upon net worth, there would probably be a lessening of a defendant's net worth as each successive case was decided, which would have an effect upon the

amount of punitive damages which could be assessed in each successive case.

It is also fair to ask whether a defendant who has been punished with punitive damages when the first case is tried should be punished again when the second, or the tenth, or the hundredth case is tried. With a long succession of cases the threat of overkill would be real indeed.

Finally, there is a question of basic fairness to the present defendants. In *Collins* v. *Eli Lilly Co.* (1984) 116 Wis.2d 266 [342 N.W.2d 37] (cert. den. 1984, — U.S. —, [83 L.Ed.2d 51, 105 S.Ct. 107]) a DES case, the Supreme Court of Wisconsin declined to apply the market share theory of liability, but permitted the victim to recover from each defendant manufacturer joined or impleaded damages proportionate to the jury's assignment of liability under a comparative negligence scheme. (342 N.W.2d at pp. 48-53.) With respect to the plaintiff's prayer for punitive damages, the court stated, at page 54: *"The concept of punitive damages embodies a rule for individualized punishment of a wrongdoer whose conduct toward the plaintiff is particularly outrageous.* Implicit in this concept is the notion that, where punishment is to be exacted, it must be certain that the wrongdoer being punished because of his conduct actually caused the plaintiff's injuries. Under this rule [the plaintiff], who has sued multiple defendants and has represented that she cannot prove which defendant actually caused her injuries, may not recover punitive damages." (Italics added.)

In California, the theory of market share liability does not require that all of the persons or entities which participated in the market be named as defendants in plaintiff's complaint; those who are not named escape liability. Furthermore, one or more of the named defendants may also escape liability by proving they did not furnish the DES that caused plaintiff's injury.

If a plaintiff is permitted to seek punitive damages, in a case in which liability for compensatory damages is based solely on participation in the market, some suppliers, who are not named as defendants, but who may have acted with malice in manufacturing and distributing DES, and one of which may have provided the specific substance ingested by plaintiff's mother, will fortuitously escape liability altogether. At the same time others, whose conduct was no more culpable, and who may have caused plaintiff no actual harm, but who have been named as defendants, will remain subject to the burden of punitive damages. This would be grossly unfair.

We conclude that the foregoing public policy considerations, i.e., preservation of the rights of future claimants to compensatory damages, the

potential for overkill, the punitive effect of numerous and substantial compensatory awards to present and future claimants, the attenuated deterrent effect of long belated awards, and the inherent unfairness of punitive damages in the market share scheme, preclude such damages in market share liability cases.

We hold that in the context of the case at bench, in order to impose punitive damages the plaintiff must first identify the defendant who supplied the DES which was ingested by the plaintiff's mother and caused the damage complained of and also prove that that defendant acted with malice or oppression. Consequently, punitive damages cannot be alleged in a case in which liability is based solely upon the participation of the defendant in the market.

### DECISION

The alternative petition for writ of mandate is discharged. The petition for peremptory writ of mandate is denied.

Klein, P. J., and Lui, J., concurred.

Petitioner's application for review by the Supreme Court was denied July 10, 1985.