EMI MUSIC MARKETING (f/k/a EMI Music Distribution), a division of Capitol Records, Inc., Plaintiff,

v.

AVATAR RECORDS, INC. and Larry Robinson, Defendants.

No. 03 Civ. 2783(VM).

United States District Court, S.D. New York.

Sept. 13, 2004.

Michael S. Elkin, Shari H. Markowitz, Shari Markowitz Savitt, Thelen, Reid & Priest, L.L.P., New York City, for EMI Music Marketing.

Paul A. Chin, Law Office of Paul A. Chin, New York City, for Avatar Records.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff EMI Music Marketing ("EMI") has submitted five motions *in limine* in advance of the upcoming trial on defendant Avatar Records, Inc.'s (Avatar) breach of contract counterclaims. The Court has previously addressed many of the facts and issues involved in this case in its decision granting in part and denying in part EMI's motion for summary judgment ("EMI I") and will not reiterate them here.[1]

EMI's first motion *in limine* asks the Court to present to the jury during its opening instructions a summary of the Court's ruling in EMI I. As the parties are aware, the Court granted summary judgment to EMI on its claim for account stated in the amount of $1,136,160.71 and

---

1. For a detailed description of the facts and claims involved in this case, see *EMI Music Marketing v. Avatar Records, Inc.,* 317 F.Supp.2d 412 (S.D.N.Y.2004) (*"EMI I"*).

stayed execution of that judgment pending the resolution of Avatar's counterclaims for breach of contract. EMI has submitted a proposed jury instruction for the Court to issue at the beginning of the trial detailing the Court's rulings and findings in EMI I. EMI argues that without such an instruction summarizing the events leading up to the trial, it would be unfairly prejudiced at trial because jurors may perceive it as the defendant rather than the initial plaintiff in this action.

The Court has examined EMI's proposed instruction and now rejects EMI's request to read it to the jury at the start of the trial. The only facts and issues of concern to the jurors are those that relate to the claims to be tried before them. The Court will instruct the jury on the nature of a counterclaim in its initial instructions without delving into the specifics of this case, and will also instruct the jury that other claims between the parties have been resolved before trial without further describing them. Accordingly, EMI's first motion *in limine* is denied.

■ In its second motion *in limine,* EMI asks the Court to preclude Avatar from presenting evidence related to any claim for punitive damages. Avatar does not oppose this motion. It is generally established under New York State law that, with a narrow exception not applicable here, punitive damages are not available for a breach of contract. In *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995), the New York Court of Appeals emphasized the limited circumstances when punitive damages may be recoverable on a breach of contract claim: when (1) the defendant's conduct is actionable as an independent tort; (2) the tortious conduct is egregious; (3) the egregious conduct is directed to the plaintiff; and (4) that conduct is part of a pattern directed at the

public generally. *Id.* at 767. There is no suggestion in this case that EMI's conduct as to its alleged breach of the contract, if proven, was part of any larger pattern of activity directed at the general public. Accordingly, EMI's second motion *in limine* is granted.

■ EMI's third motion *in limine* seeks to prevent Avatar from introducing any evidence relating to Avatar's assertions that EMI and its former employee Michael Mack ("Mack") engaged in improper conduct or breached the Distribution Agreement with respect to the "Oz" Album, and that EMI or any of its employees or representatives fraudulently inflated Soundscan reports of record sales. In the summary of counterclaims in its pretrial order, Avatar asserts that "EMI breached the Distribution Agreement by: (a) instructing its sales staff not to solicit sales of, or provide marketing support for, the Oz album; (b) refusing to release the NVA album in October 2002, as requested by Avatar; and (c) terminating the Distribution Agreement in April 2003, and refusing to release the NVA album, and re-release the Oz album after the Distribution Agreement had been extended."

In *EMI I,* the Court expressly ruled that Avatar had produced no evidence that Mack or anyone else at EMI had sabotaged or in any way failed to support the Oz Album. The Court sees no need to revisit that issue now. The Court also ruled in *EMI I* that Avatar had not put forward evidence sufficient to support an allegation of fraudulently inflated Soundscan reports. Avatar thus cannot present evidence at trial relating to that allegation. Accordingly, the Court grants EMI's third motion *in limine.*

■ EMI's next motion is to preclude Avatar from introducing evidence to support its claim for lost profits arising out of

EMI's allegedly improper termination of the Distribution Agreement dated January 1, 2000 (the "Distribution Agreement"), and also to preclude Avatar from introducing any damages evidence not previously produced during discovery. EMI argues that Avatar has no lost profits, cannot prove its damages arising from EMI's failure to release the NVA album, and finally that Avatar's claimed damages arising out of the NVA album are speculative. EMI's arguments in this motion are more properly directed to the jury during trial than to the Court before trial. Certainly, to recover damages Avatar will have to introduce sufficient evidence, and EMI will be free to challenge that evidence at trial and to argue to the jury that Avatar has failed to prove damages. The Court also notes that Avatar has represented that it has no intention to attempt to introduce at trial any undisclosed documentary evidence of lost profits. Accordingly, EMI's fourth motion *in limine* is denied.

■ EMI's final motion is made pursuant to Fed.R.Civ.P. 37(c)(1) to preclude Avatar from introducing at trial any witnesses or documentary evidence not previously disclosed during the pretrial disclosure period. EMI claims that, in its words, "on the eve of trial," Avatar is seeking to introduce documents and witnesses that it did not produce during discovery. Federal Rules of Civil Procedure 26(a) and 26(e) place an initial and ongoing burden on all parties to disclose the identities of individuals and copies or descriptions of documents that they may use to support their claims or defenses. Rule 37(c)(1) prevents a party who fails to disclose that information without substantial justification from using that evidence at trial, unless the failure to disclose is harmless.

EMI has prepared a list of individuals and documents that it claims Avatar has placed on its list of potential witnesses and exhibits for trial but has not previously disclosed. The Court first notes that even if Avatar did not previously disclose these persons and documents during the formal discovery period, Avatar submitted its pretrial order on July 7, 2004, more than two months before the trial is now scheduled to begin and hardly on the "eve of trial" (although the Court recognizes that the trial was initially scheduled to begin only one month after the submission of the pretrial order). More importantly, it appears that although Avatar may not have formally disclosed several of these individuals and exhibits to EMI previously, EMI was aware of their existence and relevance. Six of the eight potential witnesses for whom EMI now claims unfair surprise are current or former EMI employees who were either disclosed *by EMI* in discovery or whose names appeared in documents produced by EMI. The Court also notes that one of the individuals was identified by name in *EMI I,* and several of their names appeared in documents submitted as part of the summary judgment motion.

Turning to the challenged exhibits, the Court notes that eight of the twelve exhibits were attached to the Declaration of Larry Robinson in the summary judgment motion. Avatar additionally asserts that it or EMI previously disclosed all of the challenged exhibits.

EMI essentially argues that it will be a victim of unfair surprise if Avatar is permitted to introduce the challenged witnesses and exhibits at trial. But the Court concludes that it is appropriate to invoke Rule 37's harmless error provision. Although it may be true that Avatar failed to adhere to the letter of the discovery rules, the Court is convinced that EMI was sufficiently aware of the existence and relevance of the persons and documents in question so that it is not being subjected to

trial by ambush, EMI's fifth motion *in limine* is therefore denied.

### ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the motions *in limine* of plaintiff EMI Music Marketing are resolved as follows: the first, fourth and fifth motions are denied; the second and third motions are granted.

**SO ORDERED.**