In the

# United States Court of Appeals
### For the Seventh Circuit

---

No. 05-4066

RAPID TEST PRODUCTS, INC.,

*Plaintiff-Appellant,*

*v.*

DURHAM SCHOOL SERVICES, INC.,

*Defendant-Appellee.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 03 C 2431—**James B. Moran**, *Judge.*

---

ARGUED MARCH 28, 2006—DECIDED AUGUST 18, 2006

---

Before POSNER, EASTERBROOK, and WILLIAMS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Rapid Test Products contends in this suit under 42 U.S.C. §1981 that Durham School Services has discriminated against it because Rapid Test's owner is a black woman. Durham signed a contract with a school district in Illinois; the contract was subject to a set-aside reserving some subcontracts for disadvantaged business enterprises, and this program treats both race and sex as kinds of disadvantage. Rapid Test negotiated with Durham and believed that it had received a subcontract under the set-aside program; Durham actually made one payment (which Durham characterizes as an advance for services that Rapid Test

never rendered). Eventually, however, Durham gave the subcontract to one of Rapid Test's competitors, owned by an Asian man. The school district, which had been informed at one time that Rapid Test would be a subcontractor, agreed to the substitution.

The district court granted summary judgment to Durham after concluding that the parties' dealings had been too indefinite to create a contract. 2005 U.S. Dist. LEXIS 17105 (N.D. Ill. Aug. 12, 2005). The conclusion that no contract came into being does not require elaboration. Preliminary negotiations between a general contractor and a potential subcontractor do not create a contractual obligation even if the general contractor uses the subcontractor's name and specifications in a bid accepted by the party ultimately paying for the goods or services. The district judge's opinion is persuasive on this subject.

If the district judge were wrong about this, Rapid Test still could not benefit: §1981 establishes a rule against discrimination in contracting and does not create any entitlement to be the beneficiary of a contract reserved for firms owned by specified racial, sexual, ethnic, or religious groups. Sections 1981 and 1983 do far more to undermine set-aside programs than to provide means to enforce them in federal court. See *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200 (1995); *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 285-95 (1976); *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563 (7th Cir. 1989). Arguments that a particular set-aside program is a lawful remedy for prior discrimination may or may not prevail if a potential subcontractor claims to have been excluded, but it is to victims of discrimination rather than frustrated beneficiaries that §1981 assigns the right to litigate.

That conclusion does not, however, bring the litigation to an end. Section 1981 protects the right to make contracts, and if Durham engaged in racial discrimination when

choosing an Asian-American man over an African-American woman then Rapid Test would have a good claim independent of any effort to use §1981 to enforce set-aside programs. See, e.g., *Sanghvi v. St. Catherine's Hospital*, 258 F.3d 570, 573 (7th Cir. 2001). After oral argument we called for supplemental briefs so that the parties could address the effect of *McDonald* and later decisions. Rapid Test told us that it wants to show that Durham engaged in race and sex discrimination by preferring an Asian-American man over an African-American woman. Such a claim cannot be negated by the lack of an enforceable contract: if race or sex discrimination is the reason why Durham did not award a subcontract to Rapid Test, then §1981 provides relief.

Even if the set-aside program is the only reason why Durham was in the market for subcontractors, it cannot prefer one minority group over another in making a decision about which firm it will engage. For this purpose it makes no difference whether the set-aside is proper under *Adarand*: If the program is lawful, then everyone within its scope must receive an equal opportunity to compete; and if it is not valid then all potential subcontractors must enjoy equal opportunities. Either way, Rapid Test cannot be disfavored on account of race or sex.

The district judge recognized that §1981 covers the making as well as the breaking of contracts but wrote: "[Rapid Test] does not allege that defendant discriminated against it in the formation of a contract. . . . Therefore, its claim depends on the existence of a contract". The supposition behind this approach is that complaints must allege legal theories, so that, by omitting from its complaint an argument that Durham discriminated in the opportunity to make contracts, Rapid Test limited the suit to one based on discriminatory breach of contract. Yet complaints need not set out either legal theories or comprehensive factual narratives. See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Simpson v. Nickel*, 450 F.3d 303,

305-06 (7th Cir. 2006); *Bartholet v. Reishauer A.G.*, 953 F.2d 1073 (7th Cir. 1992). Under Fed. R. Civ. P. 8 a complaint pleads *claims*, which is to say grievances. The grievance specified in Rapid Test's complaint is straightforward: Durham refused (on account of Rapid Test's proprietor's race and sex) to use its services. Whether that refusal took the form of failure to make a contract, or a decision to break a contract, is a detail—and under §1981 an irrelevant detail.

As it happens, moreover, Rapid Test's complaint *does* allege discriminatory refusal to enter into a contract. Paragraph 43 of the complaint, for example, protests "Durham's intentional exclusion of a minority woman from participation in contractual opportunities". See also ¶41. Now maybe Rapid Test did not do enough to alert the district judge to this aspect of its claim—once a party moves for summary judgment, the other side cannot rest on its pleadings but must produce evidence and provide appropriate legal support—but in this court Rapid Test's argument is explicit (Br. 25-26). Instead of responding that Rapid Test failed to preserve its point in the district court, Durham has ignored this portion of Rapid Test's appellate argument. So if anything was forfeited in the district court, the benefit of that forfeiture has been forfeited in turn on appeal.

The district court never addressed the question whether Rapid Test has evidence to back up its claim that race and sex discrimination, rather than a nondiscriminatory reason such as inability to perform the services Durham wanted, account for Durham's decision to deal with a different subcontractor. That question should be addressed by the district court in the first instance. The judgment is vacated, and the case is remanded for that purpose. If the district court concludes that Rapid Test has made out a good federal claim, it should reinstate and resolve the state-law claims as well.

No. 05-4066 5

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*