In re METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION.

County of Suffolk and Suffolk County Water Authority

v.

Amerada Hess Corp. et al., 04 Civ. 5424.

Master File No. 1:00–1898.

MDL No. 1358 (SAS).

No. M21–88.

United States District Court, S.D. New York.

Sept. 20, 2007.

Robin Greenwald, Esq., Robert Gordon, Esq., Weitz & Luxenberg, P.C., Samuel Issacharoff, Esq., New York, NY, Carla M. Burke, Esq., Scott Summy, Esq., Baron & Budd, P.C., Dallas, TX, for Plaintiffs and Suffolk County Plaintiffs.

Peter John Sacripanti, Esq., James A. Pardo, Esq., McDermott Will & Emery LLP, New York, NY, for Defendants.

Robert E. Meadows, Esq., Charles C. Correll, Jr., Esq., King & Spalding LLP, Houston, TX, Richard E. Wallace, Jr., Esq., William F. Hughes, Esq., Wallace King Domike & Branson PLLC, Washington, D.C., Sheila L. Birnbaum, Esq., Barbara Wrubel, Esq., Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, for Defendants Chevron Texaco Corporation (n/k/a Chevron Corporation), Chevron U.S.A. Inc., TRMI Holdings Inc., Texaco Inc., and Chevron Environmental Services Company.

## OPINION AND ORDER

SHIRA A. SCHEINDLIN, District Judge.

## I. INTRODUCTION

Methyl tertiary butyl ether ("MTBE") is a chemical compound that companies be-

gan adding to gasoline in 1979.[1] "While the use of MTBE as a fuel additive in gasoline has helped to reduce harmful air emissions, it has also caused widespread and serious contamination of the nation's drinking water supplies."[2] This chemical compound "dissolves and spreads readily in the groundwater underlying a spill site, resists biodegradation, and is difficult and costly to remove from groundwater."[3]

In 2002, the County of Suffolk and the Suffolk County Water Authority filed a Complaint against various oil companies as a result of the contamination, or threatened contamination, of their groundwater with MTBE. After defendants removed the action from state to federal court, the Judicial Panel on Multidistrict Litigation transferred the action to this Court pursuant to section 1407 of Title 28 of the United States Code as part of a large multi-district litigation involving MTBE.

Over the last five years, plaintiffs and defendants have engaged in extensive discovery and motion practice. The trial in this case, the *Suffolk County* action, is set to begin in March 2008, less than eight months from now. According to the parties, the trial will last at least three months.

Defendants now move, under Rule 56 of the Federal Rules of Civil Procedure, to dismiss *"claims* for punitive damages" based on market share liability.[4] For the reasons that follow, I will consider defendants' motion as a motion in *limine* and grant defendants' motion.

## II. PUNITIVE DAMAGES ARE A REMEDY, NOT A CLAIM

■ "Rule 56 was designed to provide a mechanism by which unsupportable *claims* can be terminated before trial."[5] A "claim" is the "legal theory under which relief is sought"[6] or, as Judge Frank East-

---

1. *See* Application for Methyl Tertiary Butyl Ether, Decision of the Administrator, 44 Fed. Reg. 12,242, 12,243 (Mar. 6, 1979).

2. Methyl Tertiary–Butyl Ether (MTBE): Advance Notice of Intent to Initiate Rulemaking Under the Toxic Substances Control Act to Eliminate or Limit the Use of MTBE as a Fuel Additive in Gasoline, 65 Fed.Reg. 16,094, 16,-096–97 (Mar. 24, 2000).

3. *Id.* at 16,096.

4. *See* Defendants' Reply Brief in Support of Their Motion for Partial Summary Judgment on Claims for Punitive Damages Based on Market Share Liability ("Def. Reply") (emphasis added). The following defendants have joined in this motion: Amerada Hess Corp., Ashland Inc., Atlantic Richfield Co., BP Amoco Chemical Co., BP Products NAY Inc., Chevron U.S.A. Inc., CITGO Petroleum Corporation, CITGO Refining and Chemicals Co. LP, Coastal Eagle Point Oil Co., ConocoPhillips Co., Crown Central Petroleum Corp., El Paso Merchant Energy Petroleum Co., Equistar Chemicals LP, Equilon Enterprises LLC,

ExxonMobil Chemical Co., ExxonMobil Corp., ExxonMobil Oil Corp., Mobil Corp., Flint Hills Resources LP, Getty Petroleum Marketing, Inc., Marathon Petroleum Co. LLC, Marathon Oil Co., Motiva Enterprises LLC, Shell Oil Co., Shell Oil Products Co., Shell Oil Products Co. LLC, Shell Trading (US) Co., Shell Petroleum Inc., Texaco Inc., Texaco Refining and Marketing Inc., Texaco Refining and Marketing Inc., Texaco Refining and Marketing (East) Inc., TMR Co., Tosco Corp., PDV Midwest Refining LLC, Getty Properties Corp., Giant Yorktown Inc., Gulf Oil Limited Partnership, Irving Oil Corp., Irving Oil Ltd., Lyondell Chemical Co., Lyondell–Citgo Refining LP, Sunoco Inc., Sunoco Inc. (R & M), The Premcor Refining Group Inc., Total Petrochemicals USA Inc., Valero Energy Corp., Valero Marketing and Supply Co., Valero Refining and Marketing Co., and Valero Refining Co.

5. Arthur R. Miller, *The Pretrial Rush to Judgment*, 78 N.Y.U. L.Rev. 982, 1019 (2003) (discussing the history of summary judgment).

6. *Nunley v. Kloehn*, 158 F.R.D. 614, 618 (E.D.Wis.1994).

erbrook described it, the "grievance" [7] for which plaintiffs seek redress. As one court has explained:

> [A] single cause of action, or lawsuit, may consist of many different claims, or legal theories of relief; a fired employee, for example, may bring claims of age and sex discrimination in the same proceeding, or bring claims of termination based on harassment and retaliatory motives. Under these circumstances, it would indeed be misleading to equate these terms; the sequence of factual occurrences gives rise to a single cause of action which, in turn, is comprised of several claims, or legal theories of recovery. A cause of action, then, may contain numerous claims, while a single claim may or may not constitute a single cause of action.[8]

In this case, plaintiffs assert claims for: (a) violation of section 8(e) of the Toxic Substances Control Act ("TSCA"); [9] (b) public nuisance; (c) strict liability for design defect; (d) strict liability for failure to warn; (e) negligence; (f) private nuisance; (g) violation of New York's General Business Law; (h) violation of New York's Navigation Law; and (i) trespass.[10] Thus, plaintiffs' Complaint has nine claims—one claim for each alleged violation of federal or state law.

A single claim may support multiple types of relief, including declaratory judgments, injunctions, compensatory damages, and punitive damages. In this case, should the jury find that the plaintiffs have proved one or more of their federal and state claims, the relief sought by plaintiffs includes:

1. Injunctive and equitable relief;

2. Compensatory damages for loss of consumer confidence and resulting business;

3. Punitive damages;

4. Reasonable fees for attorneys and expert witnesses;

5. Costs and disbursements of this lawsuit;

6. Interest on the damages according to law;

7. Reasonable fees for attorneys and expert witnesses, pursuant to 15 U.S.C. § 2619(c)(2); and

8. Any other and further relief as the Court deems just, proper, and equitable.

The distinction between plaintiffs' nine claims and the various forms of relief that they seek highlights a fundamental problem with defendants' motion: it makes little sense for defendants to move to dismiss the "*claims* for punitive damages." [11]

According to plaintiffs, "defendants' motion reads more like a motion *in limine* or motion to strike rather than a motion for

---

**7.** *Rapid Test Prods., Inc. v. Durham Sch. Servs., Inc.*, 460 F.3d 859, 860 (7th Cir.2006). *See generally* Bradley Scott Shannon, *Action Is an Action Is an Action Is an Action*, 77 Wash. L.Rev. 65 (2002) (discussing the importance of the proper use of terminology in the Federal Rules of Civil Procedure and the definitions of action, claim, averment, paper, dismissal, and judgment).

**8.** *Nunley*, 158 F.R.D. at 617.

**9.** 15 U.S.C. § 2607(e).

**10.** These claims—except the TSCA claim—are governed by New York law.

**11.** The Court has spent more time than usual on defining a claim because this is the second time that it has addressed this issue in this MDL. *See In re MTBE Prods. Liab. Litig. ("In re MTBE")*, 241 F.R.D. 435, 438 n. 7 (S.D.N.Y.2007) ("While the Complaint also alleges a claim of 'res ipsa loquitur,' this is only an evidentiary method of proving negligence.") (citations omitted).

partial summary judgment."[12] Plaintiffs are correct: the focus of defendants' motion is whether plaintiffs should be allowed to seek the remedy of punitive damages at trial, not whether plaintiffs' claims should fail for lack of evidence.

Punitive damages are a monetary remedy "aimed at deterrence and retribution."[13] Punitive damages are not a "claim" and thus summary judgment is an ill-suited procedural vehicle. Federal courts grant summary judgment under Rule 56, which states:

> The *judgment* sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[14]

Rule 54(a) states: " 'Judgment' as used in these rules includes a decree and any order from which an appeal lies."[15] Further, Rule 54(b) addresses how courts may enter judgment upon multiple claims or in an action involving multiple parties:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.[16]

Rule 56, together with Rule 54, allows a court to enter partial summary judgment, but these rules focus on *claims*, not the relief sought. Thus, the very concept of defendants' proposal—partial summary judgment as to a particular *remedy*—is outside the contemplation of the Federal Rules.[17]

I will therefore treat defendants' motion as a motion *in limine*, a motion that the Supreme Court has recognized as stemming from the "district court's inherent

---

**12.** Plaintiffs' Corrected Memorandum of Law in Opposition to Defendants' Motion for Partial Summary Judgment on Claims for Punitive Damages Based on Market Share Liability ("Pl.Mem.") at 3 n. 1.

**13.** *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 416, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).

**14.** Fed.R.Civ.P. 56(c) (emphasis added).

**15.** Fed.R.Civ.P. 54.

**16.** Fed.R.Civ.P. 54(b).

**17.** Part of the confusion on this issue arises from a lack of precision by courts when deciding whether to allow a jury to award punitive damages. For example, the Second Circuit has repeatedly endorsed the use of summary judgment as to punitive damages "claims." *See, e.g., Keywell Corp. v. Piper & Marbury LLP,* 51 Fed.Appx. 337, 337 (2d Cir. 2002) (summary order holding that "[s]ummary judgment for [defendant] on the punitive damages claim was proper"); *Davis v. The Gap, Inc.,* 246 F.3d 152, 172, 176 (2d Cir.2001) ("we affirm the grant of summary judgment in favor of the defendant denying [plaintiff's] claims ... for punitive damages"); *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 780–81 (2d Cir.1999) (implying that summary judgment as to punitive damages claim is permissible).

authority to manage the course of trials."[18] Indeed, "[s]everal cases have entertained such motions on the eve of trial as procedural devices designed to narrow the issues to be presented to the jury."[19] Specifically, defendants' motion will be considered as a motion *in limine* to exclude from trial all arguments and evidence that are relevant solely to punitive damages on market share wells.[20]

## III. PLAINTIFFS ARE PRECLUDED AT TRIAL FROM ARGUING OR PRESENTING EVIDENCE RELEVANT TO PUNITIVE DAMAGES WHEN PLAINTIFFS RELY ON MARKET SHARE LIABILITY

"Here, defendants limit this motion to the narrow ground that the punitive damage[s] claim cannot be sustained in a case asserting market share liability."[21] The crux of defendants' argument is that the use of market share liability is "irreconcilable" with and "cannot be maintained together" with punitive damages.[22] Defendants' argument closely tracks the reasoning of a California intermediate appellate court that addressed this issue, *Magallanes v. Superior Court*.[23] I disagree with the reasoning in *Magallanes* to the extent it held that the use of an alternative method of proving causation leads *inevitably* to the conclusion that punitive damages—or any particular type of relief—can never be awarded.

Nonetheless, I reach the same conclusion as the *Magallanes* court for a different reason: New York law suggests that punitive damages should not be available when a plaintiff is allowed to rely on market share liability. More specifically, I predict that the New York Court of Appeals would not allow punitive damages based on its reasoning in *Hymowitz v. Eli Lilly & Co.*,[24] New York's leading case on

18. *Luce v. United States*, 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). *"In limine"* literally means "at the outset." 75 Am.Jur.2d Trial § 94 (2007). *See also id.* § 98 ("Because the motion in limine may be utilized not only to preclude prejudicial evidence from being introduced at the trial, but also in other ways to narrow the issues, shorten the trial, and save costs for the litigants, it has been said that many courts will encourage the use of motions in limine whenever appropriate.").

19. *Lovejoy–Wilson v. Noco Motor Fuels, Inc.*, 242 F.Supp.2d 236, 244 (W.D.N.Y.2003) (citing *Pepe v. Maklansky*, 67 F.Supp.2d 186, 187–88 (S.D.N.Y.1999); *Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, No. 94 Civ. 5220, 1998 WL 665138, at *1–2 (S.D.N.Y. Sept.25, 1998); and *Tout v. County of Erie*, No. 95 Civ. 66H, 1998 WL 683770, at *6–7 (W.D.N.Y. Sept.9, 1998)). *Accord Command Cinema Corp. v. VCA Labs, Inc.*, 464 F.Supp.2d 191, 205 (S.D.N.Y.2006) (granting motion *in limine* to preclude plaintiff's request for punitive damages); *EMI Music Mktg. v. Avatar Records, Inc.*, 334 F.Supp.2d 442, 444 (S.D.N.Y.2004) (granting motion *in limine* precluding evidence relating to punitive damages because New York law did not permit punitive damages for plaintiff's claim).

20. Defendants tacitly acknowledge that a motion *in limine* is appropriate by noting that they have submitted "this motion now so that the Court can consider it at the same time the Court is considering how to structure the trial of the *Suffolk* case." *See* Defendants' Memorandum in Support of their Motion for Partial Summary Judgment on Claims for Punitive Damages Based on Market Share Liability ("Def.Mem.") at 1.

21. *Id.* at 2.

22. *Id.* at 1.

23. 167 Cal.App.3d 878, 883–90, 213 Cal.Rptr. 547 (1985). *Magallanes* is obviously not controlling in applying New York law.

24. 73 N.Y.2d 487, 502, 541 N.Y.S.2d 941, 539 N.E.2d 1069 (1989).

market share liability.[25] In *Hymowitz*, the Court adopted a market-share theory using a national market to presume causation and apportion liability based upon "the amount of risk of injury each defendant created to the public-at-large."[26] At the same time, the Court held that "the liability of DES producers is several only, and should not be inflated when all participants in the market are not before the court in a particular case."[27] By rejecting joint liability, the Court indicated that it clearly did not want to place an undue burden on manufacturers beyond that required to provide fair compensation to plaintiffs.[28]

### A. Market Share Liability Is a Method of Proving Causation

Defendants in the case now before this Court argue that:

Plaintiffs seek to spread liability among defendants based on a market share theory. They invoke the market share theory in order to avoid the usual burden of having to prove that a particular defendant's conduct caused their alleged damages. Plaintiffs also seek to impose punitive damages on defendants for their alleged conduct. Plaintiffs cannot have it both ways. As a matter of law, they cannot maintain a market share claim and a claim for punitive damages together.[29]

This argument, which relies heavily on the reasoning offered by the *Magallanes* court, misrepresents the function of "market share liability" because it is not an independent claim. Market share liability is an evidentiary tool that allows a plaintiff to prove causation, which is an element of a claim.[30]

■ For example, a negligence claim typically has four elements: (1) duty, (2) breach, (3) causation, and (4) damages. A plaintiff must prove each of these elements to the fact finder by a preponderance of the evidence in order to obtain relief. Under New York law, the application of "market share liability" to a particular claim allows a plaintiff to prove the element of causation when the "product in question is fungible, and as a result, the plaintiff cannot identify which defendant proximately caused her harm."[31]

This is not unusual: similar evidentiary methods for proving a particular element of a claim are common in many areas of law. Common law courts have long recognized the doctrine of res ipsa loquitur as creating a presumption that a defendant breached a duty to plaintiff. In *Byrne v. Boadle*,[32] where this doctrine was first articulated, a pedestrian sued a flour merchant after being injured by a barrel that fell from the merchant's second-story

---

25. *In re MTBE*, 457 F.Supp.2d 298, 303 (S.D.N.Y.2006) ("In making a prediction of state law a court must determine what the state's highest court would find if presented with the same issue."). *See also In re MTBE*, 379 F.Supp.2d 348, 369–70 (S.D.N.Y.2005) (examining each state's law in order to determine whether the highest court in that state would apply market share liability).

26. *Id.* at 512, 541 N.Y.S.2d 941, 539 N.E.2d 1069.

27. *Id.* at 512–13, 541 N.Y.S.2d 941, 539 N.E.2d 1069.

28. *See id.* at 513 n. 3, 541 N.Y.S.2d 941, 539 N.E.2d 1069.

29. Def. Mem. at 1.

30. *See Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 727 N.Y.S.2d 7, 750 N.E.2d 1055 (2001).

31. *In re MTBE*, 447 F.Supp.2d at 299.

32. 159 Eng. Rep. 299 (Exch.1863).

storeroom. "The case came before the common law Court of Exchequer on appeal, and the court's head, Chief Baron Jonathan Frederick Pollock, favoring the plaintiff *despite his inability to present affirmative evidence* of the defendant's negligence, observed that '[t]here are certain cases of which it may be said res ipsa loquitur [the thing speaks for itself], and this seems one of them.' " [33] If the evidentiary doctrine of res ipsa loquitur applies, the plaintiff need not present any additional evidence to prove that the defendant breached a duty.

Courts have created similar presumptions in other areas of law including presumptions that apply to the element of causation. For example, in *Strickland v. Washington*, the Supreme Court held that when a defendant alleges that his counsel provided ineffective assistance in violation of the Sixth Amendment, the defendant must prove (1) that his counsel's performance fell below an objective standard of reasonableness, and (2) prejudice, *i.e.*, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [34]

"In certain Sixth Amendment contexts," however, "prejudice is presumed." [35] For example, if the government interferes with a defendant's counsel, the defendant need not provide any evidence that the ineffectiveness of counsel affected the result of the proceeding—the act of interference itself is all the evidence that the defendant needs to show prejudice.[36] Likewise, some courts will presume that an error harmed the defendant if the defendant proves an attorney's actual or constructive absence during a critical stage of the trial.[37]

■ "Market share liability" serves the same function as the doctrine of res ipsa loquitur, or the *Strickland* doctrine that presumes counsel's conduct harmed a defendant, or any number of areas of law where parties may satisfy a particular element of a claim by proving other facts. Similar presumptions are found in the context of securities regulation, discrimination law, and probate law—to name just a few.[38] Likewise, under the doctrine of market share liability, *if* a plaintiff proves that a defendant violated a state or federal

---

**33.** G. Gregg Webb, Note, *The Law of Falling Objects: Byrne v. Boadle and the Birth of Res Ipsa Loquitur*, 59 Stan. L.Rev. 1065, 1067 (2007) (quoting *Byrne*, 159 Eng. Rep. at 300) (emphasis added).

**34.** 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**35.** *Id.* at 691, 104 S.Ct. 2052.

**36.** *See id.*

**37.** *See, e.g., Martin v. Rose*, 744 F.2d 1245, 1250–51 (6th Cir.1984) (holding that counsel's lack of participation rendered adversarial process unreliable, constituting *per se* prejudice).

**38.** *See, e.g., Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) (securities regulation) (holding that the defendant's failure to disclose certain information, if the plaintiff proves it was material, establishes causation because under such circumstances "positive proof of reliance is not a prerequisite to recovery"); *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) (race discrimination law) (holding that a policy that has a disparate impact on one race is presumed to violate a statute that prohibits discrimination "because of" race unless it can be shown that the policy has a business necessity). In probate and contract law, the doctrine of "undue influence" allows a party to invalidate a document if it was obtained through the manipulation of another person. However, because "undue influence" is difficult to prove directly, there is a large body of case law concerning when courts should presume that undue influence caused the execution of the document.

law in manufacturing a defective product, and also that the plaintiff was harmed by that product, yet it is unable to identify the specific manufacturers that harmed it because the defective product is fungible, the law presumes that the manufacturers caused the injury on a basis proportional to each manufacturer's share of the market for that product.[39]

The fact that market share liability is an evidentiary tool to prove an element of a claim underscores why a court cannot reflexively conclude that using it prevents an award of punitive damages. Neither pure logic nor deductive reasoning dictates that market share liability and punitive damages are mutually exclusive. Such a conclusion must be based on the state law governing the claim. Thus, in this case, I must predict how the New York Court of Appeals would decide this issue.

### B. Punitive Damages Are Not Available When New York Plaintiffs Rely On Market Share Liability

■ In *Hymowitz*, New York's highest court held that plaintiffs could rely on market share liability to prove causation, and thereby apportion liability among pharmaceutical manufacturers when plaintiffs could not identify which manufacturer produced the drugs that harmed them. The Court's holding struck a balance between allowing plaintiffs to seek compensation for their alleged harm and protecting defendants from bearing a disproportion-

ate responsibility to compensate plaintiffs for harm they may not have caused.

The *Hymowitz* Court adopted "a market share theory using a national market" for "essentially practical reasons." [40] In so doing, the Court was "aware that the adoption of a national market will likely result in a disproportion between the liability of individual manufacturers and the actual injuries each manufacturer caused in this State." [41] As the Court explained:

> our market share theory cannot be founded upon the belief that, over the run of cases, liability will approximate causation in this State. Nor does the use of a national market provide a reasonable link between liability and the risk created by a defendant to a particular plaintiff.[42]

Despite these flaws in its method, the Court adopted market share liability because it was an "equitable way to provide plaintiffs with the relief they deserve." [43]

The problem that allows plaintiffs to rely on market share liability is that they cannot determine who injured them because the offending product is fungible or commingled with other identical products (or both) and therefore cannot be identified as emanating from a particular defendant. Under such circumstances, one party must bear the inequity of the situation: either plaintiffs are foreclosed from obtaining relief for their injuries, and the defendants obtain a "windfall" by escaping liability despite their unlawful behavior,[44] or

---

**39.** This Opinion uses the term "causation" in the sense of product/defendant identification (*i.e.*, that a given defendant caused MTBE to be produced and distributed in a manner that allowed it to reach plaintiffs' wells), not in the sense of exclusive causation (*i.e.*, that it was MTBE—and not some other pollutant or condition—that caused plaintiffs' well water to be unfit for consumption—if indeed it is unfit).

**40.** *Id.* at 511, 541 N.Y.S.2d 941, 539 N.E.2d 1069.

**41.** *Id.* at 511–12, 541 N.Y.S.2d 941, 539 N.E.2d 1069.

**42.** *Id.* at 512, 541 N.Y.S.2d 941, 539 N.E.2d 1069.

**43.** *Id.*

**44.** *Id.*

the defendants must provide plaintiffs with relief despite a flawed apportionment of liability.

At the same time, the *Hymowitz* Court was cautious about expanding defendants' liability and thereby magnifying the potential inequities. The Court held that the liability "is several only, and should not be inflated when all participants in the market are not before the court in a particular case." [45] Again, the Court based its decision on equity and fairness:

> We understand that, as a practical matter, this will prevent some plaintiffs from recovering 100% of their damages. However, we eschewed exculpation to prevent the fortuitous avoidance of liability, and thus, equitably, we decline to unleash the same forces to increase a defendant's liability beyond its fair share of responsibility.[46]

Two points deserve emphasis in predicting how the Court would rule on this issue. *First*, the Court in *Hymowitz* acknowledged—and sought to minimize—the inequities imposed on defendants when plaintiffs utilize market share liability. Allowing punitive damages would magnify any inaccuracies between the harm done and the relief provided by particular defendants. This is especially true in this case because "each jury will only be permitted to award a ratio or multiplier, rather than any dollar figure." [47]

*Second, Hymowitz* explicitly and repeatedly based its holding on practical reasons. It was "confronted [ ] with an unprecedented identification problem, and [ ] provided a solution that rationally apportions liability." [48] The Court "heeded the practical lessons learned by other jurisdictions, resulting in [its] adoption of a national market theory with full knowledge that it concedes the lack of a logical link between liability and causation in a single case." [49]

Practical considerations weigh in favor of not allowing a jury to award punitive damages where plaintiffs rely on market share liability. In particular, the theory relies on the assumption that plaintiffs cannot prove which defendant injured them. Because this method of proof is easier for plaintiffs than proving which defendants actually caused the harm, plaintiffs have an incentive to rely on market share liability, even when they could, with greater effort, identify the particular defendant or defendants that caused their injuries.

Restricting punitive damages to cases in which a plaintiff identifies the actual bad actors will encourage plaintiffs to make every effort to identify the particular defendants who caused the harm. This restriction minimizes the incentive for plaintiffs to rely on market share liability and thus helps to limit the use of that theory to

---

45. *Id.* at 512–13, 541 N.Y.S.2d 941, 539 N.E.2d 1069.

46. *Id.* at 513, 541 N.Y.S.2d 941, 539 N.E.2d 1069. *See also id.* at 508, 541 N.Y.S.2d 941, 539 N.E.2d 1069 ("We turn then to the question of how to fairly and equitably apportion the loss occasioned by DES, in a case where the exact manufacturer of the drug that caused the injury is unknown.") (emphasis added).

47. *In re MTBE*, Nos. 00 Civ. 1898, M21–88, MDL 1358, 2007 WL 1791258 at *6 (S.D.N.Y. June 15, 2007).

48. *Hymowitz*, 73 N.Y.2d at 513 n. 3, 541 N.Y.S.2d 941, 539 N.E.2d 1069. *See also id.* at 507, 541 N.Y.S.2d 941, 539 N.E.2d 1069 ("We conclude that the present circumstances call for recognition of a *realistic avenue* of relief for plaintiffs injured by DES.") (emphasis added).

49. *Id.*

those plaintiffs who truly cannot identify the defendants who allegedly caused their harm.

Market share liability has the effect of placing the burden on the defendant to prove that it did not cause a particular harm. However, a plaintiff who seeks punitive damages should also be required identify the defendants that caused the harm rather than lumping all defendants together to find the deepest pockets among them. Thus, while I disagree with the proposition that market share liability is necessarily "irreconcilable" with punitive damages, I find that allowing such damages where causation is established by market share liability would be inconsistent with New York law.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion *in limine* is granted. When the New York plaintiffs rely on market share liability to prove causation for a particular well, they are precluded from arguing that punitive damages are available for that well, and are further precluded from presenting evidence that is relevant solely to punitive damages as to that well. The Clerk of the Court is directed to close this Motion (document # 1395).

SO ORDERED: