KEYWELL CORP., formerly known as Samuel G. Keywell Co. and Keywell L.L.C., in its own capacity, as well as in its capacity as the successor, assignee and subrogee of Keywell Corporation, Plaintiffs–Counter–Defendants–Appellants–Cross–Appellees,

v.

**PIPER & MARBURY L.L.P.,**
Defendant-Counter-Claimant-Appellee-Cross-Appellant.

Nos. 01–9126(L), 01–9188(XAP).

United States Court of Appeals, Second Circuit.

Oct. 31, 2002.

Alisa Labut Wright, Roetzel & Andress (Ronald S. Kopp, on the brief), Akron, Oh, for Appellants.

James P. Ulwick, Kramon & Graham, P.A. (Kevin F. Arthur, on the brief), Baltimore, MD, for Appellee.

Present: WALKER, Chief Judge, NEWMAN, and F.I. PARKER, Circuit Judges.

### SUMMARY ORDER

At a stated term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 31st day of October, two thousand and two.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of said district court be and it hereby is **AFFIRMED.**

Plaintiffs Keywell Corp. and Keywell L.L.C. ("Keywell") appeals from the August 23, 2001 denial of its Rule 59 motion for a new trial, after a jury trial in July 2000 resulted in a verdict that defendant Piper & Marbury ("Piper") did not breach its fiduciary duty to the plaintiff or commit legal malpractice, and that Keywell owed Piper contingency fees.

This dispute arises out of Piper's representation of Keywell during and after its 1987 purchase ("1987 Purchase") of VacAir, a scrap metal recycling company. During the purchase, Piper hired an environmental consulting firm to perform an environmental assessment of the VacAir facilities. In the assessment and throughout the transaction, VacAir and its shareholders concealed documentation of its disposal of toxic waste and lied to the environmental consulting firm about its on-site disposal of toxic wastes, including trichloroethylene ("TCE"). They also signed the Purchase Agreement containing specific representations stating that there had been no storage, disposal, treatment or material spill of any toxic or hazardous substances at the facility. According to Keywell, Piper advised that the assessment had revealed no environmental "red flags" and that the maximum potential environmental exposure that Keywell would likely face in the VacAir purchase was $1 million. Keywell declined to conduct further groundwater testing and proceeded with the closing.

In 1989, in an effort to settle unrelated claims, Keywell entered into a release ("1989 Release") with the VacAir management shareholders. This agreement unconditionally released any claims Keywell had against the management shareholders arising out of the 1987 Purchase Agreement as of August 11, 1989, accelerating a "sunset clause" from the 1987 Purchase Agreement by four months.

In 1990, a grand jury investigation revealed the true extent of VacAir's prior TCE dumping and groundwater contamination, which were of an entirely different "order of magnitude" than what the environmental consultant's assessment had reported in 1987. Acting on Piper's advice, Keywell entered into a settlement agreement ("1990 Settlement Agreement") with the New York State Department of Environmental Conservation ("NYSDEC") to commence an investigation and to clean up the site.

In 1996, Keywell initiated this action against Piper asserting claims for malprac-

tice, breach of fiduciary duty, and breach of contract arising out of Piper's representation of Keywell in 1987, 1989, and 1990. The district court granted Piper's motion for summary judgment on Keywell's 1989 and 1990 claims and on the punitive damages claim, but denied its motion on the 1987 claims. The jury rejected the 1987 claim. Keywell appealed and Piper cross-appealed.

■ First, Keywell claims that the district court abused its discretion in excluding evidence of potential liability for off-site contamination at the Town of Carroll landfill. This court reviews a district court's decision to admit or exclude evidence for abuse of discretion, and such decision will not be upset unless it was "manifestly erroneous." *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 92 (2d Cir.2002). Keywell's second amended complaint did not include any specific allegations concerning potential liability for off-site contamination, and Keywell notified Piper of the new evidence over two years after the close of discovery and only three months prior to the start of trial. "[C]onsiderations of undue delay ... and prejudice to the opposing party [are] touchstones of a district court's discretionary authority to deny leave to amend." *O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 70 (2d Cir.2002). Because the delay was unjustified and prejudicial, the district court did not abuse its discretion in excluding the evidence.

■ Second, Keywell argues that question one of the special verdict form presented to the jury ("Question 1") was improper because it merged Keywell's distinct claims that Piper had (1) committed legal malpractice and/or (2) breached its fiduciary duty. We review the district court's formulation of special interrogatories under Fed.R.Civ.P. 49 for an abuse of discretion. *Vichare v. AM-*

*BAC Inc.*, 106 F.3d 457, 465 (2d Cir. 1996). The questions must be read in conjunction with the judge's instructions to the jury, and reversal is warranted "if the questions [1] mislead or confuse the jury, or [2] if they inaccurately frame the issues to be resolved by the jury." *Id.* We agree with the district court that the wording of its question allowed the jury to find *either* a breach of fiduciary duty or a legal malpractice, and to consider each claim separately. The district court combined the two claims into one question because they were so interrelated, and because the court sought to avoid an inconsistent verdict. The court also adequately instructed the jury on each of Keywell's causes of action. Thus, the district court's merger and phrasing of the two claims in Question 1 was not an abuse of discretion.

■ Third, Keywell argues that the district court erred in granting summary judgment to Piper on Keywell's claims arising out of the 1989 Release. This court reviews the district court's grant of summary judgment *de novo*, construing all evidence in favor of the non-moving party. *Regional Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 45 (2d Cir.2002). Summary judgment is proper, however, when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.* Keywell claims that Piper provided erroneous advice about the 1989 Release, advising that Keywell's CERCLA rights against VacAir would survive the release. We agree with the district that "there is no evidence that Piper's representation in connection with the release caused any damages independent of those allegedly attributable to Piper's 1987 representation." Even if these damages stemmed from the 1987 representation, the jury found that Piper did not commit legal mal-

practice or breach its fiduciary duty in 1987. In *Keywell Corp. v. Weinstein*, in which Keywell sued the VacAir shareholders for fraud and CERCLA liability, this court held that "the parties unambiguously allocated liability for CERCLA losses in the Purchase Agreement," and thus, Keywell's CERCLA liability was determined in 1987 and not affected by the 1989 Release. *Keywell Corp. v. Weinstein*, 33 F.3d 159, 165–66 (2d Cir.1994). We also agree with the district court that Keywell did not present any actual evidence that "had there been no August 1989 release, Keywell would have conducted an environmental investigation prior to the expiration of the sunset provision." In the absence of any evidence that accelerating the sunset provision caused Keywell any additional damage, the district court was correct to dismiss the 1989 claims.

■ Fourth, Keywell argues that the district court erroneously granted summary judgment on its claim that Piper's representation in the 1990 Settlement Agreement with NYSDEC was negligent. Keywell contends that it agreed to the settlement on the basis of Piper's assurances that it could recover its clean-up costs from the VacAir management, which turned out to be incorrect; and that Piper, facing a conflict of interest because it knew that it had committed malpractice in connection with the 1987 Purchase Agreement, breached its fiduciary duty by failing to provide Keywell with information material to the settlement. We agree with the district court that Keywell again "failed to allege damages independent of those based on the 1987 representation" and that Piper was not liable for advising Keywell to enter into the Settlement Agreement with the NYSDEC because its advice was based on a reasonable legal judgment. In New York, an attorney may take chances in the conduct of a litigation and, "(i)f in such

cases a lawyer errs on a question not elementary or conclusively settled by authority, that error is one of judgment for which he is not liable." *Parksville Mobile Modular, Inc. v. Fabricant*, 73 A.D.2d 595, 422 N.Y.S.2d 710, 717 (N.Y.App.Div.1979). In 1994, this court recognized the potential viability of Keywell's fraud in the inducement claim against the VacAir management shareholders and remanded that claim to the district court. *Keywell*, 33 F.3d at 163–65. It was not clear until this court's ruling in 1994 that Keywell's potential CERCLA claims were foreclosed as a result of the 1987 Purchase Agreement and sunset provision. *See id.* at 165–66. As such, Piper's 1990 recommendation that Keywell should enter into a settlement with the NYSDEC and then recover from the management shareholders reflected a sound legal strategy that cannot form the basis for a legal malpractice claim. Moreover, Keywell has not produced any evidence of damages flowing from the 1990 representation. With regard to the conflict of interest allegation, it is also worth noting that the jury found no malpractice in Piper's 1987 representation.

■ Fifth, Keywell appeals the grant of summary judgment for Piper on the punitive damages claim, arguing that the jury could have found that Piper had reckless disregard for Keywell's rights and that Keywell was entitled to establish evidence of Piper's state of mind on the basis of circumstantial evidence. We agree with the district court's conclusion that Keywell "failed to allege facts demonstrating that Piper's conduct was so outrageous as to evince a high degree of moral turpitude and showing such wanton dishonesty as to imply a criminal indifference to civil obligations." *See Walker v. Sheldon*, 10 N.Y.2d 401, 223 N.Y.S.2d 488, 179 N.E.2d 497, 499 (1961); *Liss v. Smith*, 991 F.Supp. 278, 308 n. 32 (S.D.N.Y.1998). Construed

in Keywell's favor, the allegations set forth in its second amended complaint suggest that Piper was, at most, negligent, and perhaps even reckless, but the claims are purely private in nature, and Keywell fails to show that they imply criminal indifference to civil obligations. Furthermore, the 1987, 1989, and 1990 claims of malpractice or breach of duty were either rejected by the jury or by summary judgment on the merits. Summary judgment for Piper on the punitive damages claim was proper.

Finally, Piper cross-appeals, arguing that the district court erred in denying its motion for summary judgment on the 1987 claims because Keywell could not have proved damages proximately arising from Piper's alleged negligence. A cross-appeal was unnecessary because an appellee can seek to uphold a judgment in its favor on any ground available in the record. In any event, because we affirm the district court's judgment in Piper's favor, this point is moot. *See* 19 James Wm. Moore *et al.,* Moore's Federal Practice 3D § 205.08[2], at 205–73 (3d ed. 1997) ("[A] denial of summary judgment based on a genuine dispute of material facts becomes moot and unreviewable after trial since the dispute as to the facts has been resolved.").

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.