**Raymond HAMBLIN, Plaintiff,**

**v.**

**BRITISH AIRWAYS PLC, Defendant.**

**No. 09 Civ. 3077(BMC).**

United States District Court,
E.D. New York.

June 15, 2010.

Mary Schiavo and Michael E. Elsner, Motley Rice, LLC, for Plaintiff.

Anthony U. Battista and Jean Cooper Rose, Condon & Forsyth LLP, for Defendant.

## MEMORANDUM DECISION AND ORDER

COGAN, District Judge.

Plaintiff was a passenger in defendant's airplane when it crash-landed at London City Airport on February 13, 2009. Plaintiff claims, *inter alia*, that he lost his job as an Operations Manager for Microsoft Corporation's ("Microsoft") Global Practices Group because he was unable to fly, and required other special accommodations, after the accident. Defendant has already conceded liability and now seeks to limit its damages by precluding plaintiff from any recovery arising out of his termination from Microsoft. Defendant has submitted documentary evidence and testimony that Microsoft's decision was the byproduct of a company restructuring and downsizing, not any change in plaintiff's work performance after the accident. Because plaintiff has failed to set forth any admissible evidence that this was not the case, defendant's motion is granted.

## BACKGROUND

The facts surrounding plaintiff's employment and the crash landing are not genuinely disputed. Plaintiff was travelling on business, as he frequently did, when the landing gear on defendant's plane malfunctioned and it crash-landed. Plaintiff had been sitting in the front of the plane and, despite being nearly overcome by smoke, made his way to the rear and out on an emergency slide. As he was going down the slide, he swerved to avoid hitting other passengers at the base and landed on his forearm. After the accident, plaintiff stayed in London for a week and sought medical treatment there. A few days after the accident, the London doctors cleared plaintiff to fly and on February 23, 2009, he flew home to Seattle, Washington. Viewing the facts in the light most favorable to plaintiff, that flight, the last he has taken, was traumatic. He was and remains petrified of getting on a plane. The mere thought invokes anxiousness, fear of death and a repeat of the crash.

About a month after his return to Seattle, plaintiff returned to work at Microsoft. On doctors' recommendations, he requested a reduced workload, to be excused from stressful situations, and not to travel. Microsoft accommodated his requests and plaintiff continued to perform well. His supervisor at Microsoft, Tyrone Keith Moore ("Moore"), testified at deposition that the accommodations plaintiff required did not impact his job performance, which was "good." Before plaintiff was laid off, Moore testified, he had been "performing and achieved and he was on track in delivering the business. He was doing good." Plaintiff had good relationships with his

customers and good feedback from his peers. Moore further testified that there was no decline in plaintiff's performance after the accident.

During the May layoffs at Microsoft, Moore lost a third of his team, including plaintiff.[1] Moore testified that plaintiff's termination was the byproduct of an internal restructuring to consolidate operations: "It was part of a business restructuring at Microsoft and part of the Mission Critical Program. The reactive part of the business that Ray was associated [with] was moved over into Premier [a different Microsoft division], which ... had started building a comparative offering, and at that point it was deemed that it was a duplicate effort compared to what my team was doing, and they wanted to consolidate those efforts." He thus testified that plaintiff's position was eliminated due to redundancy.

Although the strategic decision to merge the two units was "made above [his] pay level," Moore was charged with implementing it. As he testified: "What I was given was the directive that once those decisions were made ... [I had] to execute that as part of a bigger plan and a senior leadership decision." The reason that plaintiff lost his job, Moore testified, was because Microsoft "discontinued the business group."

As his direct supervisor, Moore was the one who told plaintiff that he would no longer be working for Microsoft. At that termination interview, plaintiff told Moore and the human resources representative present that he thought the layoff was a ruse and that he was really being fired because of his inability to travel internationally. "I worked for Global Services Organization, which involves a lot of travel, and in not being able to travel, that sort of

renders me useless ... and therefore of no value to that particular organization." Plaintiff testified that he believed this based on "hallway discussions and insinuations" that he overheard between other colleagues in his group.

Plaintiff received a termination letter, dated May 5, 2009, which reiterated that his position was being eliminated as part of a restructuring and reorganization of his group. The termination letter stated that "[d]ecisions regarding who would be affected by the job eliminations were based on the projected business needs of your organization going forward, and were based on a number of factors, including [ ] job function, knowledge, skills, and experience, and performance." After conferring with an attorney, plaintiff executed the letter on June 15, 2009 and accepted a severance package, which included job search assistance and total compensation of some $90,000. Plaintiff never returned to work, but immediately began looking for another position and had an interview with Microsoft.

Plaintiff brought this suit under Article 17 of the Montreal Convention, which holds the carrier strictly liable for all damages resulting from an accident that occurred onboard the aircraft. *See* Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, art. 17, *reprinted* in S. Treaty Doc. No. 106–45, 1999 WL 33292734. The carrier can avoid, or limit, liability by proving that the accident was not the proximate cause of plaintiff's damages, which is what defendant seeks to do here. *See id.; Shah v. Pan Am. World Servs., Inc.,* 148 F.3d 84, 97 (2d Cir.1998) (explaining that "Article 17 requires proximate causation as between the 'accident' and plaintiffs' 'damage'.") (emphasis omitted); *Sirico v.*

1. Three individuals under Moore's direct supervision were terminated.

*British Airways PLC*, 98–CV–4938, 2002 WL 113877 (E.D.N.Y. Jan. 22, 2002) (denying summary judgment where whether plaintiff's refusal to leave the airplane was the proximate cause of her injuries was a triable issue of fact).

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only "where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court views all facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)). The Court's responsibility "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510).

Once the moving party has documented particular facts, "the opposing party must 'set forth specific facts showing that there is a genuine issue for trial'." *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986) (quoting Fed.R.Civ.P. 56(e)). A party may not defeat a motion for summary judgment solely through "unsupported assertions" or "conjecture." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995). The nonmoving party cannot rest on "mere allegations or denials" of the facts submitted by the moving party. Fed.R.Civ.P. 56(e); *see Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514 (citing Rule 56(e)); *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir.2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525–26 (2d Cir. 1994). Summary judgment is, in short "[t]he time ... to put up or shut up." *Weinstock v. Columbia University*, 224 F.3d 33, 41 (2d Cir.2000) (internal citations and quotations omitted).

The nonmoving party must fight facts with facts. It is not enough to "rely on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Goenaga*, 51 F.3d at 18 (internal citations omitted). "[T]he mere existence of *some* alleged factual dispute between the parties" will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original). Rather, the nonmoving party must marshal "concrete evidence from which a reasonable juror could return a verdict in his favor." *Id.; see* Fed.R.Civ.P. 56(e).

### B. Partial Summary Judgment

Some courts have limited the availability of summary judgment motions to foreclosure of specific claims, not remedies. For example, in *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 517 F.Supp.2d 662, 666 (S.D.N.Y.2007) ("*MTBE*"), the defendants moved for "summary judgment" against plaintiff's claim for punitive damages. Judge Scheindlin pointed out that punitive damages is not a claim, but a remedy, and reasoned that the word "claim" in Rule 56 refers to the legal theory upon which the request for relief is based, not the remedy that would flow from success on that theory. She supported this conclusion, in part, by referring

to Rule 56(c)(2), which describes the basis for the entry of a "judgment," and from there reasoned that since no "judgment," in the sense of a final or appealable order, could be entered as a result of eliminating the plaintiffs' punitive damage demand, the defendants' motion could not properly be categorized as one for summary judgment. She also relied on Rule 54(b), which allows, upon proper findings, entry of a final judgment as to disposition of less than all of the "claims" before the Court, and read that *in pari materia* with Rule 56. Nevertheless, she found that she had the inherent power to consider the defendants' motion by construing it as a motion *in limine*, and granted it on that basis, rather than under Rule 56.

The posture of this case differs from that of *MTBE*. As Judge Scheindlin noted, the basis for the defendants' motion there was that the plaintiffs' theory of liability did not permit punitive damages as a matter of law. The issue was thus purely legal, not "whether plaintiffs' claims should fail for lack of evidence." 517 F.Supp.2d at 666. It therefore made some sense to treat the motion as a motion *in limine*. In contrast, defendant's motion here is precisely whether plaintiff's claims should fail for lack of evidence, *i.e.*, whether there is sufficient evidence to raise a factual issue for the jury to resolve. That kind of search for factual issues, based on an analysis of the record, does not lend itself comfortably to the motion *in limine* context, which is generally confined to evidentiary, or perhaps most broadly, as in *MTBE*, non-record dependent legal issues, like those that could just as easily be raised in the Rule 12 context. *See generally* BLACK'S LAW DICTIONARY 1109 (9th ed.2009) (defining motion *in limine* ). Only through application of the tests employed under Rule 56 can I evaluate defendant's motion, and if those tests under Rule 56 are unavailable, I must deny it,

because there is no other procedural vehicle for the pretrial determination of an issue like this.

■ In contrast to the *MTBE* court, I conclude that the word "claim" in Rule 56 is not limited to the theory of liability that a plaintiff asserts. A theory of liability is useless to a plaintiff without remedies flowing from that claim, and so I see the "claim" as being composed of both the theory of liability and the remedies that that theory supports. *See* BLACK'S LAW DICTIONARY 81–82 (defining "claim" both as "[t]he aggregate of operative facts giving rise to a right enforceable by a court" and as "[a] demand for money, property, or a legal remedy to which to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for" (*i.e.*, the *ad damnum* clause)). Under this analysis, the right and the remedy are each part of the "claim" as defined in Rule 56.

This recognition that a particular element of requested damages, like a theory of liability, is a part of a "claim" as used in Rule 56 is determinative of whether I can consider defendant's motion because Rule 56(a) and (b) expressly allow summary judgment as to part of a claim: "A party against whom relief is sought may move … for summary judgment on all *or part* of a claim." Fed.R.Civ.P. 56(b) (emphasis added). In addition, it would seem unduly restrictive to not allow a motion directed to an element of damages, such as defendant seeks here, since the scope of the Rule is defined by reference to a party "against whom relief is sought," not, for example, a party against whom a theory of liability is asserted.

I do not see that this analysis is undermined by Rule 56(c)(2), which discusses the basis for rendering a "judgment," any more than it is undermined by the name of

Rule 56 ("Summary Judgment") itself. I reach this conclusion because Rule 56(d) expressly contemplates that there will be summary judgment motions that, although granted in part, will result in the entry of an order other than a judgment:

(d) Case Not Fully Adjudicated on the Motion.

(1) Establishing Facts. If summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue. The court should so determine by examining the pleadings and evidence before it and by interrogating the attorneys. It should then issue an order specifying what facts-including items of damages or other relief-are not genuinely at issue. The facts so specified must be treated as established in the action.

That is precisely what defendant is asking me to do here.

This analysis is supported by, rather than contrary to, Rule 54(b). The *MTBE* court seemed to believe that Rule 56 and Rule 54(b) must be co-extensive in scope—that any order entered under Rule 56 that does not dispose of the case entirely must be amenable to certification under Rule 54(b) because both Rules use the word "judgment"—but I do not see why that has to be the case. It is well settled that an order under Rule 56(d)(1) that resolves liability in plaintiff's favor but leaves open the remedy does not qualify for Rule 54(b) certification. *Liberty Mut. Ins. Co. v. Wetzel,* 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976); *Steve's Homemade Ice Cream, Inc. v. Stewart,* 907 F.2d 364 (2d Cir.1990). That means that such orders can be entered under Rule 56, even though they are not judgments. Rule 56 thus provides for a broader range of orders than can be certified under Rule 54(b).

Finally, I note, as did the *MTBE* court, that the Second Circuit has regularly reviewed grants of "partial summary judgment," eliminating elements of damages before trial, when the case has later come up on final judgment. *See, e.g., Keywell Corp. v. Piper & Marbury L.L.P.,* 51 Fed. Appx. 337 (2d Cir.2002) (affirming summary judgment precluding plaintiff from seeking punitive damages because its claims were insufficient to support its claims of criminal indifference); *Davis v. Gap, Inc.,* 246 F.3d 152, 172 (2d Cir.2001) (same). In fact, *Ehrlich v. American Airlines, Inc.,* 360 F.3d 366 (2d Cir.2004), in which the Second Circuit affirmed "partial summary judgment" precluding plaintiffs from pursuing claims for mental injuries resulting from the crash landing of defendant's airplane when it overshot its designated runway, has obvious factual and procedural similarities to the issues before me.

The *MTBE* court correctly referred to this as "a lack of precision by courts" in defining motions seeking to preclude the jury's consideration of particular elements of damages. 517 F.Supp.2d at 666 n. 17. The Wright & Miller treatise similarly considers the term "partial summary judgment" to be ambiguous or worse, since the order is not a judgment as referred to in other rules or as generally understood and recommends that courts use the phrase "partial summary adjudication." 10B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2737 & n. 29 (3d ed.1998). That, however, seems to raise the somewhat obscure question of when an "adjudication" does not result in a "judgment." I think "partial summary judgment" is as good a phrase as any, since the important concept is that the tests for issue-finding under

Rule 56 are being applied in the determination of the motion.

In any event, so long as it is understood that the established Rule 56 tests for determining whether an issue of fact exists are being applied, it matters little what the resulting order is called. I will therefore proceed to consider whether defendant has established that there is no genuine issue of material fact as to plaintiff's right to recover damages for being laid off from Microsoft, and I will do that under Rule 56.

### C. Analysis

■ Defendant argues that there is no evidence that plaintiff was laid off from Microsoft because of his inability to fly following the accident or the accommodations Microsoft made for him. Instead, defendant represents, all of the evidence shows unrelated, valid business reasons, as set forth in plaintiff's termination letter and testified to by Moore.[2]

Reiterating the suspicions he first voiced at the meeting where Moore told him he was being laid off, plaintiff argues that Microsoft's explanations are a sham and that the real reason he lost his job was because of his inability to undertake international travel. First, plaintiff contends that the termination letter supports his theory because one of the factors Microsoft considered were his "skills and performance." This mischaracterizes the letter. It does not state or in any way imply that there was any deficiency in plaintiff's skills or performance. It simply set forth a list of factors applied to all employees that Microsoft considered in implementing its reorganization plan. To get at which ones resulted in plaintiff's termination, one has to go to plaintiff's supervisor, who

testified quite clearly that plaintiff's performance did not fall off at all after the accident; that he was fully satisfied with plaintiff's performance; and that plaintiff was terminated based on the redundancy of the position that he held, not his performance, and not because of Microsoft's accommodation of him.

Plaintiff portrays Moore's testimony as stating that Moore did not know whether any of the accommodations plaintiff required after the accident influenced the decision to terminate him. That is not Moore's testimony. Moore testified that he did not have personal knowledge of the higher-level business decisions to merge plaintiff's group with another, not whether plaintiff's accommodations were a factor in his termination. Once the Microsoft higher-ups had made the strategic business decision to combine the two groups, Moore was charged with its execution.

In support of his theory, plaintiff relies in large part on his own testimony. Plaintiff testified that he overheard unidentified Microsoft employees saying that he was "useless" because of his inability to travel. This is inadmissible hearsay, not competent evidence of the reasons for Microsoft's decision. *See, e.g., Donovan v. Inc. Vill. of Malverne*, 344 Fed.Appx. 625, 628 (2d Cir. 2009) (affirming district court's exclusion as hearsay of third party's testimony as to what he overheard defendant say to someone else); *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir.1999) (finding that plaintiff's own affidavit as to what he was told by his employer was not competent evidence as to the employer's decision under Rule 56); *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir.1997) ("[O]nly admissible evidence

---

2. In opposition, plaintiff has submitted voluminous evidence about the crash and the injuries he suffered. The trauma of the accident and the severity of plaintiff's injuries, however, are not contested.

need be considered by the trial court in ruling on a motion for summary judgment.").

Plaintiff's next attempt to rebut defendant's evidence is Exhibit Q; a four-page-long Microsoft spreadsheet that he describes as definitive evidence that he was terminated because of his inability to fly. According to him, it shows that the corporate reorganization was still "incomplete" and "preliminary" in September, some four months after his termination letter.[3] But the fact that Microsoft's reorganization took more than four months to fully implement does not in any way suggest that plaintiff was terminated based on his performance or because he required accommodations, especially since his supervisor testified that this was not the case. Moreover, the spreadsheet is riddled with internal abbreviations, and largely indecipherable.

 Finally, plaintiff asks to reopen discovery to inquire further into Microsoft's reasons for terminating him. The discovery period was already extended three months—with advice that the Court was unlikely to extend it further—and I see no reason to reopen discovery at this late date. It would be one thing if there was reason to believe that someone at Microsoft might have been dissatisfied with plaintiff's performance or the need to accommodate him. But plaintiff's employment file has been produced, and we have unqualified testimony from plaintiff's supervisor that *he* was more than satisfied. If the immediate supervisor is satisfied, and doesn't know of anyone else who was dissatisfied with plaintiff, then it is pure speculation to think that someone higher up the chain might have had such dissatisfaction.

I have to determine whether any reasonable jury could find that Microsoft laid plaintiff off because of his injury. In other words, if a jury was given this record, and asked to make a special finding as to whether Microsoft terminated him, at least in part, because of his condition or work performance after the accident, could that finding be sustained? I do not see how I could sustain any such finding. Defendant has offered abundant evidence that plaintiff's termination was based on Microsoft's business needs, not having anything to do with plaintiff, and plaintiff has responded with nothing other than surmise.

**CONCLUSION**

Defendant's motion for partial summary determination is granted.

**SO ORDERED.**

---

**3.** "Preliminary" does not appear within the text, but is included as a header to the document. The word "incomplete" is nowhere to be found. In addition to the spreadsheet, plaintiff relies on Exhibit L in support of his argument that "Microsoft had neither a defined, nor concrete, finalized plan for customers of this updated offering at the time of [plaintiff's] termination." Exhibit L consists of medical evaluations of plaintiff by several doctors, including an orthopedist, a neurologist, pulmonologist and psychiatrist. There is no evidence before me that these had any effect on Microsoft's decision to terminate plaintiff, assuming they were in fact given to Microsoft.